## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

|  |  |
|---|---|
| METROPLEX ATHEISTS,<br>     *Plaintiff,*<br><br>v.<br><br>CITY OF FORT WORTH,<br>DOWNTOWN FORT WORTH, INC.,<br>MATTIE PARKER,<br>CARLOS FLORES,<br>MICHAEL D. CRAIN,<br>CHARLES LAUERSDORF,<br>GYNA BIVENS,<br>JARED WILLIAMS,<br>MACY HILL,<br>CHRIS NETTLES,<br>ELIZABETH M. BECK,<br>ALAN BLAYLOCK,<br>JEANETTE MARTINEZ,<br>DAVID COOKE,<br>WILLIAM JOHNSON, *each in their*<br>*individual and official capacities,*<br>     *Defendants.* | No. 4:23-cv-00736<br><br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT

Plaintiff Metroplex Atheists ("MA"), a secular nonprofit organization in North Texas, by its undersigned counsel, brings this action against the City of Fort Worth, Texas (the "City"); Downtown Fort Worth, Inc. ("DFWI"); the City of Fort Worth City Council ("City Council"), collectively and individually; Mattie Parker, Carlos Flores, Michael D. Crain, Charles Lauersdorf, Gyna Bivens, Jared Williams, Macy Hill, Chris Nettles, Elizabeth M. Beck, Alan Blaylock, and Jeanette Martinez; City Manager, David Cooke; and Assistant City Manager, William Johnson. Seeking to protect and

vindicate their constitutional rights, Plaintiff states as their complaint against the above-captioned Defendants the following:

## NATURE OF THE CLAIMS

1.      Plaintiff sought access to the City's Banner Forum, a limited public forum provided by the City to nonprofit organizations that wish to promote events. Plaintiff's event, planned for August 26, 2023, meets all the requirements to be included in the Banner Forum. Yet Defendants denied Plaintiff the opportunity to promote the event, based solely on the event's content and viewpoint in violation of the First Amendment of the United States Constitution.

2.      This action challenges Defendants' policies, practices, and actions taken to censor Plaintiff's protected speech. Discriminating against Plaintiff's speech based on its content and particular message is textbook viewpoint discrimination and abridges Plaintiff's First Amendment rights under the Free Speech Clause of the United States Constitution.

3.      This action further challenges Defendants' policies, practices, and actions blatantly preferring pro-religious speakers in the City's Banner Forum as a violation of the Establishment Clause of the First Amendment of the United States Constitution.

## JURISDICTION & VENUE

4.      This case arises under the First Amendment to the United States Constitution and presents a federal question within this Court's jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3). The Court has authority to issue a declaratory

judgment under 28 U.S.C. § 2201 and to provide injunctive relief and damages under 28 U.S.C. § 1343 and Fed. R. Civ. P. 65.

5.      Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(2) because the events giving rise to Plaintiff's claims occurred herein.

## PARTIES

6.      The Plaintiff, Metroplex Atheists ("MA"), is a nonprofit 501(c)(3) organization incorporated in North Texas with a principal place of business at P.O. Box 121818 Arlington, Texas 76012. MA is a member organization whose purpose is to (1) educate its members and the public about the philosophy and social values of atheism and the nature and importance of separation of church and state, (2) to foster a community for members through regular meetings, and (3) to protect the civil rights of atheists.[1] MA, as a nonprofit corporation, was harmed when Defendants' infringed on MA's First Amendment right to free speech by engaging in impermissible viewpoint discrimination. The harm to MA is ongoing. MA brings this suit on behalf of itself and its members.

7.      Defendant City of Fort Worth, Texas (the "City") is a municipality in the State of Texas, within the counties of Tarrant, Denton, Parker, and Wise, and exists pursuant to the laws of the State of Texas.

8.      Defendant City of Fort Worth City Council ("City Council") is the City's elected governing body. It consists of the City's mayor and a number of council

---

[1] By-Laws, METROPLEX ATHEISTS, https://www.metroplexatheists.org/by-laws/ (last visited July 6, 2023).

members.[2] The City Council has the power to "adopt municipal ordinances and resolutions, make proclamations, set the city tax rate, approve the city budget, and appoint the city secretary, city attorney, city auditor, municipal court judges, and members of city boards and commissions."[3]

9.     Defendant Mattie Parker is, and at all times relevant was, Mayor of Fort Worth and a voting member of the City Council.

10.     Defendant Carlos Flores is, and at all times relevant was, City Councilmember for District 2.

11.     Defendant Michael D. Crain is, and at all times relevant was, City Councilmember for District 3.

12.     Defendant Charles Lauersdorf is City Councilmember for District 4 and has been since May 16, 2023.

13.     Defendant Blaylock represented District 4 from May 2022 to May 2023.

14.     Defendant Gyna Bivens is, and at all times relevant was, Mayor Pro Tempore of the City and City Councilmember for District 5.

15.     Defendant Jared Williams is, and at all times relevant was, City Councilmember for District 6.

16.     Defendant Macy Hill is, and at all times relevant was, City Councilmember for District 7.

---

[2] The City's website states the City Council consists of eight members. However, ten members are listed on the webpage. *See infra*, note 3.

[3] Elected Officials, CITY OF FORT WORTH,  https://www.fortworthtexas.gov/government/elected-officials (last visited July 6, 2023).

**COMPLAINT**                                                                 **Page 4 of 23**

17.     Defendant Chris Nettles is, and at all times relevant was, City Councilmember for District 8 since 2021.

18.     Defendant Elizabeth M. Beck is, and at all times relevant was, City Councilmember for District 9 since 2021.

19.     Defendant Alan Blaylock has been City Councilmember for District 10 since taking office on May 16, 2023. Prior to taking office, Defendant Blaylock served as City Councilmember for District 4 from May 17, 2022, until May 16, 2023.

20.     Defendant Jeanette Martinez has been City Councilmember for District 11 since taking office on June 20, 2023.

21.     Defendant Downtown Fort Worth, Inc. (DFWI) is a 501(c)(3) nonprofit organization. DFWI entered into a contract with the City to manage the Banner Forum on January 26, 2010. (See Exhibit #1).  DFWI is responsible for ensuring banner content conforms to the City's Banner Policy. At all times relevant to this action, DFWI acted as an agent or designee of the City.

22.     Defendant David Cook, City Manager, is responsible for implementing City Council policies.

23.     Defendant William Johnson, Assistant City Manager, oversees the City's Transportation & Public Works (TPW), Public Events, and Economic Development Departments.

24.     Defendant Lauren Prieur, Director, TPW, has authority over approval of applications to the Banner Forum.

## FACTS

**The City's Banner Forum**

25.     Since at least 1998, the City has permitted nonprofit organizations ("Organizations") to rent space on downtown lamp posts to display banners (the "Banner Forum"). The banners are designed and paid for by the Organizations and may either promote an Organization itself or, in the case of "off-site" banners, a "special event" being held by an Organization.

26.     Section 1-61 of the "City of Fort Worth Banner Policy and Procedures" (the "Banner Policy") lists the following requirements for participation in the Banner Forum:

> Only a non/not-for-profit organization (hereinafter referred to as "Organization") may request permission to place banners within the public ROW [right of way] for the purpose of promoting the Organization or a special event and/or exhibit held by the Organization. If promoting an event/exhibit, it must be held in Fort Worth and be open to the public, or of common interest to the general community, or recognize and/or contribute to the cultural fabric of the City. Such events/exhibits may include (but are not limited to): an arts, entertainment, or education related activity; a public social occasion; a sports contest; or a public concert.[4]

27.     The Banner Policy contains no other threshold requirements for a special event or limitations on the content of the Organization's banners.

---

[4] City of Fort Worth Banner Policy and Procedures, Dep't. of Transp. and Pub. Works, available at https://ctycms.com/tx-fort-worth/docs/worth-policy-and-procedures---off-site-banners.pdf (last visited July 7, 2023); see also Downtown Banner Program, DOWNTOWN FORT WORTH INC., https://www.dfwi.org/about/banner-program#:~:text=Banners%20may%20be%20reserved%20for,org%20Downtown%20Fort%20Worth%2C%20Inc. (last visited July 7, 2023).

28.    The purpose of the Banner Forum is to help nonprofit organizations raise awareness about themselves and special events by advertising to downtown visitors.[5]

29.    The Banner Forum constitutes a limited public forum under the First Amendment of the United States Constitution. As such, the City may not exclude speech on topics otherwise permitted because the City disapproves of the speaker's viewpoint.

30.    Defendant DFWI manages the Banner Forum for the City. Organizations that wish to use the Banner Forum must provide DFWI with the description, location, and date of the event; requested dates for banner display; and proof of the Organization's nonprofit status. If the dates are available, DFWI provides a contract confirming the details, which the Organization then signs and returns. DFWI confirms the Organization's reservation once DFWI receives the Organization's payment in full.

31.    The Defendants have permitted banners for a variety of events, including those with a pro-religious viewpoint such as Kenneth Copeland Ministries, which used the Banner Forum to promote its "Southwest Believers Convention," in the summer of 2020. Defendants also regularly approve banner displays by religiously affiliated Organizations, such as Texas Christian University, which displays banners every year from late summer through the end of the fall. Other examples of approved events include art festivals and Memorial Day celebrations.

---

[5] *See* note 4, above.

**MA's use of the Banner Forum in 2019**

32.     In the summer of 2019, Defendants granted MA access to the Banner Forum to promote an educational event focused on the U.S. National Motto, "In God We Trust." The event, titled "In NO God We Trust," (the "2019 Event") was held at the Fort Worth Botanical Gardens, was open to the public, and featured several knowledgeable speakers. Bright yellow banners featuring the event title in bold blue type were displayed on Downtown Fort Worth streets for several weeks prior to the event.

33.     To obtain approval for the 2019 Event, MA contacted DFWI, submitted information regarding the 2019 Event's nature, date, and location. MA filled out, signed, and returned to DFWI a contract confirming the number of banners, the dates the banners would be displayed, and the price MA would pay. MA remitted payment to DFWI and confirmed MA's reservation. MA's banners for the 2019 Event were displayed in downtown Fort Worth.

34.     MA's striking banners led to national media attention and a number of complaints.[6] But the City stood firm in protecting Metroplex Atheists' First Amendment rights. Then-Mayor Betsy Price said on Twitter, "While many of us may not agree with the message, the organization did follow policies and procedures . . .

---

[6] *See e.g.* Elizabeth Wiley & Lauren Zakalik, *'In No God We Trust' banners stirring up controversy in Fort Worth*, WFAA (July 2, 2019, 7:51 PM), https://www.wfaa.com/article/news/local/tarrant-county/in-no-god-we-trust-banners-stirring-up-controversy-in-fort-worth/287-3089ec15-91d7-4924-9396-2abdb7ee8a84.

We must respect freedom of speech."[7] The City's official statement rightly noted that, "[i]f an organization meets the established criteria for purchasing the banners, the city cannot discriminate or dictate the content unless it contains profanity, threats, or other inappropriate images."[8]

35.     The Banner Forum fulfilled its purpose for MA's 2019 Event. Approximately 200 individuals attended the 2019 Event on July 14, 2019, exceeding MA's expectations.[9]

**MA's 2023 Banner Forum Application**

36.     Hoping to again gain the benefit of increased awareness promised by the Banner Forum, in October of 2022, MA contacted DFWI to inquire about reserving a time slot for a new event MA was planning. The planned event would focus on Christian Nationalism and keeping prayer out of public schools ("Christian Nationalism Event"). Confirmed speakers for the Christian Nationalism Event include Dr. Bradley Onishi, a religion scholar who has researched and written on the topic of Christian Nationalism, Reverend Dr. Katie Hays, a Christian pastor, and Randall Theo, president of the Downtown Fort Worth chapter of Freedom From Religion Foundation and public-school teacher.

37.     Knowing that availability in the Banner Forum was limited, MA chose the date of the event, August 26, 2023, based on when the Main Street Banners were

---

[7]     Betsy Price (@BetsyPriceftw), TWITTER (July 2, 2019, 3:28 PM), https://twitter.com/BetsyPriceftw/status/1146138702843908101.

[8] *Id.*

[9] David R. Brockman, *In No God We Trust?*, TEXAS OBSERVER (July 24, 2019, 6:00 AM), https://www.texasobserver.org/in-no-god-we-trust/.

available. MA then reserved the same venue they used in 2019, the Fort Worth Botanical Gardens, for dates that would coincide with the availability of the Main Street Banners.

38.    MA then provided DFWI with the date of the event, the venue, the planned banner artwork, and proof of MA's nonprofit status.

39.    On October 24, 2022, KayLee Pratt, Marketing & Special Projects Manager with DFWI, emailed Terry McDonald, MA's Treasurer, regarding MA's Banner Forum application. Ms. Pratt attached a partially complete contract for MA's banners to be displayed from August 8th through 22nd, 2023. Ms. Pratt noted that there were incomplete portions of the contract related to whether the banners would be picked up by MA or stored by DFWI. Ms. Pratt asked Mr. McDonald to fill in the missing information regarding banner handling and return the contract to her.

40.    Ms. Pratt did not indicate that there were any other criteria that MA's Christian Nationalism Event needed to meet.

41.    MA was never asked to supply an estimate of the number of attendees at the Christian Nationalism Event.

42.    On November 22, 2022, Ms. Pratt emailed Mr. Word and Mr. McDonald requesting proof of non-profit status and the definitive event date, and assuring them that once that information was received, she would sign the contact and send them the invoice for payment.

43.    On November 30, 2022, Mr. Word responded with the event date and venue—August 26, 2023, at the Fort Worth Botanical Gardens.

44.    MA believed that the proposed banners were set to be displayed in the Banner Forum on the requested dates.

**The City's Pretextual Denial of MA's Application**

45.    On May 19, 2023, Randy Word, a MA board member, received a telephone call from Ms. Pratt informing Mr. Word that MA's Banner Forum application had been denied by the City Manager's office. Ms. Pratt stated that MA was not in compliance with the Banner Forum policy and that said policy had been "tweaked" since MA took part in the Banner Forum in 2019. Ms. Pratt would offer no further information and directed Mr. Word to the City Manager's office for more details.

46.    Over the next two weeks, Mr. Word made multiple telephone calls and sent multiple emails seeking further information on why MA's Banner Application had been denied. After numerous dead ends, Mr. Word and MA president Umair Khan drove to the City Manager's office in person and were granted an appointment with Assistant City Manager, William Johnson.

47.    Mr. Word and Mr. Khan met with Mr. Johnson at his office on May 30, 2023. Mr. Johnson stated that MA's Banner Forum application had "somehow" ended up on his desk. He further informed Mr. Word and Mr. Khan that MA's Banner Forum application was denied because the event was not of a "magnitude" to qualify.

48.    The Banner Policy makes no reference to the expected "magnitude" of any event promoted.[10]

_____

[10] *See* note 4, above.

49.     On May 31, 2023, Mr. Word sent an email to Ms. Pratt at DFWI, requesting records for (1) all nonprofits that applied to participate in the Banner Forum from 2022 to the present; (2) the name, date, location, and type of event held by each nonprofit that was approved to participate in the Banner Forum during that time; and (3) copies of any relevant emails, between DFWI, the City, or Mr. Johnson, that mention MA, Mr. Word, Mr. Johnson, or MA's Banner Forum application. Ms. Pratt responded on June 1, 2023, that any records request must go through the City's Public Records department.

50.     The same day, May 31, 2023, Mr. Word sent a Public Information Request to the City requesting the following:

    a.     A copy of the email sent from Mr. Johnson to Ms. Pratt denying MA's Banner Forum application;

    b.     Copies of all emails sent from Mr. Johnson to DFWI that mention MA, Randy Word, and/or Terry McDonald in the past 6 months;

    c.     Copies of all emails between the City and DFWI mentioning MA, Randy Word, and/or Terry McDonald in the past 6 months; and

    d.     Copies of all emails between the City and DFWI mentioning the Banner Forum and/or the Banner Policy in the past 6 months.

51.     The City balked at Mr. Word's request, replying that fulfilling said request would require the City to search the email accounts of "thousands" of City employees and would likely incur a "very substantial fee" for Mr. Word in the process.

Mr. Word responded by narrowing his request to only emails between DFWI and Mr. Johnson that mentioned MA.

52.     On June 1, 2023, Mr. Word filed open records requests with the City's Public Records department seeking a list of all nonprofits that had applied for banner displays in 2022 and YTD in 2023 along with the name, date and location of the associated event. The City's Office of Development Services responded with two emails on June 8, 2023, one informing Mr. Word that there were no documents responsive to his request, and another informing him that "Development Services processes Banner Permits, however, Downtown Fort Worth Inc is a Bonded Banner Area, they process their own Banners in the authorized designated areas."

53.     In short, DFWI and the City each claimed that the other was the proper keeper of the records Mr. Word sought, effectively denying him access to those records without having to explicitly say that is what Defendants were doing. Mr. Word has yet to receive any records responsive to his requests.

54.     On June 2, 2023, Mr. Word sent an email to Lauren Prieur, Director of TPW, informing her of Mr. Johnson's denial of MA's Banner Forum application and requesting an appeal pursuant to Section 1-67 of the City's Banner Policy.

55.     On June 14, 2023, after Mr. Word received no response from Ms. Prieur, counsel for MA sent a demand letter via email to Defendant Parker describing the apparent violation of MA's First Amendment rights and requesting that the denial of MA's application be rescinded. The letter stated that MA was prepared to pursue litigation if the city did not comply with its constitutional obligations.

56.     Later, on June 14, 2023, Ms. Prieur finally responded via email to Mr. Word (not to counsel for MA). She informed Mr. Word that the City Council would discuss the denial of MA's Banner application at their executive session on June 27, 2023, and that the session would be closed to the public.

57.     The final meeting of the Fort Worth City Council before the July break was June 6, 2023, prior to MA learning that its appeal would not be reviewed by "[t]he appropriate City Council Committee" as stated in section 1-67 of the policy but, rather, would be reviewed by the City Council itself in closed session.

58.     On June 21 and 22, 2023, Mr. Word sent emails to City Councilmembers Bivens, Crain, Nettles, and Blaylock requesting assistance in MA's appeal of the denial. In these emails, which were identical in content, Mr. Word summarized MA's communications with DFWI and Mr. Johnson regarding the denial of MA's Banner Forum application. He included a copy of the City's statement regarding the 2019 Event banners and Mayor Betsy Price's tweets regarding the same. Mr. Word reiterated that MA met all the requirements to access the Banner Forum as documented in the City's Banner Policy and that the so-called "magnitude" justification for the denial is not a proper requirement under the policy.

59.     On June 21, 2023, Joshua Rivers, District Director for Mayor Pro Tem Gyna Bivens, responded that he would "be sure to share this with MPT Bivens."

60.     Daniel Mason, District Director in Councilmember Crain's office, responded on June 23, 2023, that Councilman Crain was out of the country but Mr.

Mason would "put [Mr. Word's] email and comments in front of him as soon as he returns."

61.    Jazzmen Tate, District Director in Councilmember Nettles' office, responded on June 22, 2023, that Mr. Word's "issue ha[d] been noted."

62.    Emily Niestroy, from Councilmember Blaylock's office, responded on June 22, 2023, that Mr. Word's "comments and commitment to the community are greatly appreciated."

63.    On June 27, 2023, the City Council convened what Deputy City Attorney Laetitia Coleman Brown described as a "Special Called Executive Session." According to Ms. Brown, one of the items on the agenda to be discussed with the City Council attorney was "legal issues concerning banner policy."

64.    The City Council's agenda for the June 27, 2023 meeting makes no reference to either a special executive session or the Banner Policy.

65.    Following the Special Called Executive Session, Ms. Prieur emailed Mr. Word. The full text of her email reads: "The original denial will be upheld.  A moratorium on new banners will be issued while the city reviews the existing policy for updates.  The appeal committee mentioned in the policy is no longer in existence."

66.    The City Council placed a "hold" on approving any new Banner Forum applications until the City Council can review the Banner Policy for potential updates.

67.    The City Council does not convene during the month of July.

68.    All pending applications other than that of Metroplex Atheists will not be denied, as MA's was, but will be held in abeyance, awaiting the City Council's return, and will be reviewed under whatever policy the City Council establishes.

69.    In direct contradiction of the statement from Ms. Prieur that a "moratorium" was placed on any new banners while the policy was under review, Banner Forum applications that had already been approved for display in July 2023 will go up as planned.

70.    Defendants offered no further explanation for their denial of MA's application.

71.    Despite the Defendants' claim that there is now a "moratorium" on new Banner Forum applications and that the Banner Policy is under review, there is no public acknowledgement of these facts to anyone other than Plaintiff.

72.    DFWI's website describing the procedures and requirements of the Banner Forum remains unchanged. Likewise, the Banner Policy remains online in the same form and with the exact same requirements as when MA applied and was approved in 2019.

73.    The Defendants have not applied the "tweaked" version of the Banner Policy (used to deny MA's application to participate in the Banner Forum) to any other application and Defendants informed Plaintiff that Texas Christian University in particular will, in all likelihood, be allowed to participate in the Banner Forum under whatever new policy the City Council establishes.

74.     Any alteration or recission of the Banner Policy would require an act of the City Council.

75.     Defendants acted with the intent to exclude Plaintiff from the Banner Forum because they disapproved of the banner's anti-Christian Nationalism message. But they knew they could not do so openly and honestly without blatantly violating MA's First Amendment rights. Instead, Defendants colluded and conspired behind closed doors to concoct a plan to exclude MA from participating in the Banner Forum without admitting they were doing so.

76.     Defendants' "magnitude" justification is pure pretext and any amendment of the Banner Forum to include "magnitude" as a criterion for participation in the program would have required an act of the City Council.

77.     The City Council took no action to include a "magnitude" requirement in the Banner Forum between when MA participated in 2019 and the denial of their application on May 19, 2023.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION: FIRST AMENDMENT, FREEDOM OF SPEECH
### (42 U.S.C. § 1983)

78.     All preceding allegations are incorporated herein by reference.

79.     The actions of Defendants and their agents, servants, employees, or contractors, as described above, violate the Free Speech Clause of the First Amendment of the Constitution of the United States, as incorporated to the states by the Fourteenth Amendment.

80.   Defendants' policies, practices, and customs prevented Metroplex Atheists from participating in the Banner Forum, a limited, designated public forum.

81.   Defendants' sudden imposition of a never-before-mentioned "magnitude" requirement as the justification for denying MA access to the Banner program constituted a prior restraint that lacked any narrow, objective, and definite standard and was therefore unconstitutional.

82.   In addition, the Defendants' denial of Metroplex Atheists'—and *only* Metroplex Atheists'—application to participate in the Banner Forum while all other applications are either being allowed to go forward as planned or are being kept pending, rather than being denied, constitutes viewpoint discrimination that cannot be justified.

83.   Furthermore, Defendants stated explicitly that Metroplex Atheists was excluded from the forum because of the content of the banners it wished to display, namely that the event advertised on the banners was not sizeable enough in the opinion of the Defendants.

84.   As a content-based restriction on participation in a public forum, the Defendants' imposition of a "magnitude" requirement on Metroplex Atheists' application is subject to strict scrutiny.

85.   The exclusion of Metroplex Atheists from the Banner Forum furthers no compelling government interest, nor is it narrowly tailored to achieve any such interest.

86.     The imposition of the purported "magnitude" requirement was merely a pretext to preclude Metroplex Atheists' participation in the Banner Forum because of their viewpoint as atheists opposed to Christian Nationalism. As such, the Defendants' actions to exclude Metroplex Atheists from the Banner Forum constituted viewpoint discrimination, "an egregious form of content discrimination" that cannot be justified even under strict scrutiny. *Rosenberger v. Rector & Visitors of the Univ. of Va.*, 515 U.S. 819, 829 (1995).

87.     Each of the institutional Defendants and the individual Defendants, in their individual and official capacities, intentionally and knowingly violated the Plaintiff's well-settled constitutional rights under the Free Speech Clause of the First Amendment, as well as that of its members.

88.     Defendants acted under color of law in violating the First Amendment as described herein in violation of 42 U.S.C. § 1983.

## SECOND CAUSE OF ACTION: FIRST AMENDMENT, ESTABLISHMENT OF RELIGION
### (42 U.S.C. § 1983)

89.     All preceding allegations are incorporated herein by reference.

90.     The actions of Defendants and their agents, servants, employees, or contractors, as described above, violate the Establishment Clause of the First Amendment of the Constitution of the United States, as incorporated to the states by the Fourteenth Amendment.

91.     Defendants' policies, practices, and customs are an attempt to preclude Metroplex Atheists—and *only* Metroplex Atheists—from the Banner Program because of its atheist worldview. Other religious entities, such as Texas Christian

University and Kenneth Copeland Ministries, will at worst have their applications held in abeyance until the Defendants can establish a new policy. Metroplex Atheists' application, *and it alone*, was denied.

92.     The Defendants' justification for the denial is Metroplex Atheists' failure to meet a "magnitude" threshold that appears nowhere in the Banner Policy and has not been applied to any other entity's application.

93.     Each of the institutional Defendants and the individual Defendants, in their individual capacities, intentionally and knowingly violated the Plaintiff's well-settled constitutional rights under the Establishment Clause of the First Amendment, as well as that of its members.

94.     Defendants acted under color of law in violating the First Amendment as described herein in violation of 42 U.S.C. § 1983.

<h3 style="text-align:center">THIRD CAUSE OF ACTION: FIRST AMENDMENT,<br>FREE EXERCISE OF RELIGION<br>(42 U.S.C. § 1983)</h3>

95.     All preceding allegations are incorporated herein by reference.

96.     The actions of Defendants and their agents, servants, employees, or contractors, as described above, violate the Free Exercise Clause of the First Amendment of the Constitution of the United States.

97.     Defendants' policies, practices, and customs seek to banish atheist viewpoints from the marketplace of ideas while simultaneously elevating religious—and particularly Christian—viewpoints to a preferred status.

98.     Both the Defendants' reappraisal of the Banner Forum on June 27, 2023, and the City Council's subsequent decision to reconsider the terms of the program were a direct response to Metroplex Atheists' application to participate.

99.     The Free Exercise Clause of the First Amendment "forbids subtle departures from neutrality and covert suppression of particular religious beliefs, *Church of Lukumi Babalu Aye v. City of Hialeah*, 508 U.S. 520, 534 (1993) (internal quotation marks omitted), and "the suppression of unpopular religious speech and exercise has been among the favorite tools of petty tyrants." *Shurtleff v. City of Boston*, 142 S. Ct. 1583, 1608 (2022) (Kavanaugh, J. concurring) (internal citations omitted). By taking action to prevent Metroplex Atheists' involvement in the Banner Forum because of its religious viewpoint, the Defendants violated the free exercise rights of Metroplex Atheists and its members.

100.    Each of the institutional Defendants and the individual Defendants, in their individual capacities, intentionally and knowingly violated Plaintiff's well-settled constitutional rights under the Free Exercise Clause of the First Amendment, as well as that of its members.

101.    Defendants acted under color of law in violating the First Amendment as described herein in violation of 42 U.S.C. § 1983.

## RELIEF SOUGHT

WHEREFORE, Plaintiff respectfully requests that this Court grant the following relief:

A.     Declaratory judgment that Defendants' actions and policies described above violate Plaintiff's rights under the Establishment, Free Exercise, and Free Speech Clauses of the First Amendment of the United States Constitution;

B.     Injunctive relief directing Defendants to approve MA's Banner Forum application and display the banners promoting the Christian Nationalism Event from August 8 to 22, 2023 as originally planned;

C.     Injunctive relief prohibiting Defendants, their agents, successors and any person in active concert with Defendants from excluding Plaintiff, or any other applicant, from the Banner Forum based on disagreement with the banner's message or the applicant's viewpoint;

D.     Award special damages in an amount to be determined;

E.     Award punitive damages in an amount to be determined;

F.     Award reasonable attorney fees and costs to the Plaintiff pursuant to 42 U.S.C. § 1988; and

G.     All other relief the Court deems just and reasonable.

Dated: July 17, 2023                    Respectfully submitted,

**GLAST, PHILLIPS & MURRAY, P.C.**

By:  */s/ M.E. Furse*
    **Matthew E. Furse**
    State Bar No. 24105032
    MFurse@GPM-Law.com
    **Lawrence S. Fischman**
    State Bar No. 07044000
    LFischman@GPM-Law.com
    **Robert N. Loughran**
    State Bar No. 24111197
    RLoughran@GPM-Law.com
    14801 Quorum Dr., Ste. 500
    Dallas, Texas 75254-1449
    Tel. (972) 419-8300
    Fax. (972) 419-8329

    *Counsel to Plaintiff,*
    **METROPLEX ATHEISTS**

    -and-

    Geoffrey T. Blackwell (NJ # 120332014)
    (application for admission pro hac vice
    forthcoming)[11]
    American Atheists Legal Center
    1517 N. Stillman St., Unit 2
    Philadelphia, PA 19121
    Phone: (908) 603-8787
    gblackwell@atheists.org

---

[11] Mr. Blackwell's home jurisdiction does not have the facility for Certificates of Good Standing to be provided electronically. Counsel has requested that the mail copy certificate be expedited and will file his application for admission as soon as the certificate is received.