## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

| | |
|---|---|
| METROPLEX ATHEISTS,<br>　　　　　　　　*Plaintiff,*<br><br>v.<br><br>CITY OF FORT WORTH,<br>DOWNTOWN FORT WORTH, INC.,<br>MATTIE PARKER,<br>CARLOS FLORES,<br>MICHAEL D. CRAIN,<br>CHARLES LAUERSDORF,<br>GYNA BIVENS,<br>JARED WILLIAMS,<br>MACY HILL,<br>CHRIS NETTLES,<br>ELIZABETH M. BECK,<br>ALAN BLAYLOCK,<br>JEANETTE MARTINEZ,<br>DAVID COOKE,<br>WILLIAM JOHNSON, *each in their in-*<br>*dividual and official capacities,*<br>　　　　　　　　*Defendants.* | No. 4:23-cv-00736-O<br><br>**JURY TRIAL DEMANDED** |

## METROPLEX ATHEISTS' BRIEF IN SUPPORT OF
## MOTION FOR TEMPORARY RESTRAINING ORDER
## AND PRELIMINARY INJUNCTION
### (Relates to Docket No. 3)

# **<u>TABLE OF CONTENTS</u>**

Table of Authorities ...................................................................................iii

Introduction ............................................................................................... 1

Statement of Facts ...................................................................................... 2

Preliminary Injunction Standard................................................................ 8

ARGUMENT & AUTHORITIES .............................................................. 9

     I.     The Plaintiff is likely to succeed on the merits of its claim. ................ 10

          A.     The Banner Policy created a limited public forum..................... 10

          B.     The Defendants' imposition of a "magnitude" requirement is an unconstitutional prior restraint on MA's speech........................ 12

          C.     The Defendants' actions constituted viewpoint discrimination and is presumptively unconstitutional. ...................................... 14

          D.     The Defendants' exclusion of MA from the Banner Forum was content-based and cannot be survive strict scrutiny. ................ 16

     II.     The Plaintiff will suffer irreparable harm if the Court denies the motion. ................................................................................................. 17

     III.     The balance of equities and public interest favor the injunction sought by Plaintiff. ......................................................................................... 18

     IV.     Granting the preliminary injunction the Plaintiff seeks is in the public interest.................................................................................................. 19

Conclusion and Prayer for Relief ............................................................. 19

# <u>TABLE OF AUTHORITIES</u>

Cases

*Bronx Household of Faith v. Bd. of Educ. of City of N.Y.*, 331 F.3d 342 (2d Cir. 2003) ................................................................................................ 18

*BST Holdings, L.L.C. v. OSHA*, 17 F.4th 604 (5th Cir. 2021) ................................... 18

*Canal Auth. of Fla. v. Callaway*, 489 F.2d 567 (5th Cir. 1974) .................................... 9

*Chiu v. Plano Indep. Sch. Dist.*, 339 F.3d 273 (5th Cir. 2003) .............................. 12, 13

*Christian Legal Soc'y v. Walker*, 453 F.3d 853 (7th Cir. 2006) ................................. 20

*City of Austin v. Reagan Nat'l Adver. of Austin, LLC*, ___ U.S. ___, 142 S. Ct. 1464 (2022) ........................................................................................... 16

*Elrod v. Burns*, 427 U.S. 347 (1976) ......................................................................... 17

*Fairchild v. Liberty Indep. Sch. Dist.*, 597 F.3d 747 (5th Cir. 2010) ......................... 10

*Forsyth County v. Nationalist Movement*, 505 U.S. 123 (1992) ........................... 12, 13

*Good News Club v. Milford Central Sch.*, 533 U.S. 98 (2001) ................................... 14

*Heaney v. Roberts*, 846 F.3d 795 (5th Cir. 2017) ...................................................... 14

*Nken v. Holder*, 556 U.S. 418 (2009) ..................................................................... 9, 19

*Opulent Life Church v. City of Holly Springs, Miss.*, 697 F.3d 279 (5th Cir. 2012) ................................................................................................ 17, 18, 19

*Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37 (1983) .............. 11, 16

*Ramirez v. Collier*, ___ U.S. ___, 142 S. Ct. 1264 (2022) ............................................. 9

*Reagan Nat'l Adver. of Austin, Inc. v. City of Austin*, 64 F.4th 287 (5th Cir. 2023) .. 16

*Reed v. Town of Gilbert*, 576 U.S. 155 (2015) ......................................................... 16

*Rest. Law Ctr. v. United States DOL*, 66 F.4th 593 (5th Cir. 2023) ............................ 9

*Robinson v. Hunt Cty.*, 921 F.3d 440 (5th Cir. 2019) .................................................. 14

*Rosenberger v. Rector & Visitors of the Univ. of Va.*, 515 U.S. 819 (1995) .......... 11, 14

*Sambrano v. United Airlines, Inc.*, 19 F.4th 839 (5th Cir. 2021)............................... 18

*Shurtleff v. City of Boston*, ___ U.S. ___, 142 S. Ct. 1583 (2022) ......................... 11, 14

*Southeastern Promotions, Ltd. v. Conrad*, 420 U.S. 546 (1975) ................................ 12

*Texas v. United States*, 809 F.3d 134 (5th Cir. 2015) ................................................. 9

*U.S. Navy Seals 1-26 v. Biden*, 27 F.4th 336 (5th Cir. 2022).................................... 17

*Winter v. NRDC, Inc.*, 555 U.S. 7 (2008)..................................................................... 9

Other Authorities

Betsy Price, Twitter (July 2, 2019, 3:28 PM),

    https://twitter.com/BetsyPriceftw/status/1146138702843908101 ..................... 4, 15

Elizabeth Wiley & Lauren Zakalik, 'In No God We Trust' banners stirring up

    controversy in Fort Worth, WFAA (July 2, 2019, 7:51 PM),

    https://www.wfaa.com/article/news/local/tarrant-county/in-no-god-we-trust-

    banners-stirring-up-controversy-in-fort-worth/287-3089ec15-91d7-4924-9396-

    2abdb7ee8a84 ..................................................................................................... 4, 15

## INTRODUCTION

1.     The Plaintiff, Metroplex Atheists (MA) asks this Court to issue a pre-liminary injunction in this matter so that it may be permitted to exercise its freedom of speech. MA seeks to participate in the City of Fort Worth's downtown banner pro-gram (the Banner Forum) to display banners from August 8 through August 22, 2023, to promote an educational event to be held at the Fort Worth Botanic Gardens on August 26, 2023. The event, and MA's promotion of it through the Banner Program, is the culmination of nearly a year of planning that the Defendants appear intent on scuttling in the final moments without any legitimate justification.

2.     MA seeks an order directing the Defendants to reverse their action deny-ing Metroplex Atheists an opportunity to participate in Fort Worth's which consti-tutes a limited public forum. MA seeks an order directing the Defendants to comply with Fort Worth's "Banner Policy and Procedures" (the Banner Policy) and display MA's banners from August 8 through August 22, 2023, in accordance with the agree-ment MA provided to DFWI (2023 Banner Agreement).

3.     The Defendants' actions excluding MA from the Banner Forum amount to an unconstitutional prior restraint on MA's participation in the Banner Program, as well as viewpoint discrimination against MA as an atheist organization. Even if the Defendants' actions did not amount to viewpoint discrimination or an unconsti-tutional prior restraint on speech, the decision would still amount to an explicit con-tent-based restriction on participation in the Banner Forum and must therefore be subjected to strict scrutiny, which the Defendants cannot meet.

## STATEMENT OF FACTS

4.     Defendant City of Fort Worth's Department of Transportation and Public Works operates a program whereby nonprofit entities may display "Off Site Banners" mounted on poles in downtown Fort Worth that are not contiguous with property owned by the nonprofit (the Banner Forum). *See* Metroplex Atheists' Appendix in Support of Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction (MA Appendix) at Pla. Appx. 0041-42. The only requirement the 2023 Banner Policy places on the content of "Off Site Banners" is that the banners must promote "special events/exhibits to be held on a specific date (or dates)." *See id*. In the case of organizations promoting specific events, the event in question "must be held in Fort Worth and be open to the public, or of common interest to the general community, or recognize and/or contribute to the cultural fabric of the City." *See id*. at Pla. Appx. 0041. Organizations' requests to display banners at a given time were handled on a first-come, first-served basis. *See id*. at Pla. Appx. 0041-42.

5.     To have Off Site Banners displayed, a nonprofit entity must submit an application and supporting documents more than four weeks prior to the dates on which the banners are to be displayed. *See id*. To be approved, the nonprofit's application materials must meet the following criteria:

A. State the purpose of the organization and event being promoted (if applicable).

B. State the dates and times banners will be installed, displayed, and removed; and, if applicable, the date(s) of the special event/exhibit.

C. State the location and number of banners, specifically banner/street light pole locations. In the event of dual requests, the application with the earliest postmark will be given first consideration, unless one of

2

the Organizations has received prior approval in which case they will retain first right of refusal.

D. Include a color sample of the banner design/content.

E. Include a check made payable to the City of Fort Worth for all applicable deposits and fees (see sections 1-64 & 1-65).

F. Include Certificates of Insurance as required by section 1-66.

*See id.*

6.      Defendant City of Fort Worth has delegated the administration of the Banner Forum to Downtown Fort Worth, Inc. (DFWI), which is responsible for approval of banner designs, installation of the banners, and storage of banners while not on display. *See id.* at Pla. Appx. 0035-40. DFWI instructs entities wishing to display banners to reserve time slots "at least six months in advance" and "deliver the banners to DFWI 7-10 days prior to [the] display time slot." *See id.* at Pla. Appx. 0060-61. Entities wishing to participate in the Banner Forum are directed to contact DFWI's Marketing and Special Projects Manager, KayLee Pratt. Downtown Banner Program, DFWI, https://www.dfwi.org/about/banner-program. Agreements between organizations and DFWI for the display of banners in the Banner Forum do not ask the participating organizations to provide any information about the size of the advertised event. *See* MA Appendix at Pla. Appx. 0041-44.

7.      In 2019, Plaintiff Metroplex Atheists participated in the Banner Forum for the first time. *See* Word Decl., ¶¶ 2-8. During the application process, Randy Word, a member of the organization's Board of Directors, requested and received a copy of the Banner Policy and Procedures in effect at that time (2019 Banner Policy). *See* MA Appendix at Pla. Appx. 0013-18. From July 2 through July 16, 2019, select streetlight

poles in downtown Fort Worth displayed yellow banners emblazoned with blue lettering declaring "In NO God We Trust" and providing the URL for MA's website. *See* Word Decl. at ¶ 8. The banners were displayed in connection with an event Metroplex Atheists was holding at the Fort Worth Botanic Garden on July 14, 2019. *See e.g.* Elizabeth Wiley & Lauren Zakalik, 'In No God We Trust' banners stirring up controversy in Fort Worth, WFAA (July 2, 2019, 7:51 PM),   https://www.wfaa.com/article/news/local/tarrant-county/in-no-god-we-trust-banners-stirring-up-controversy-in-fort-worth/287-3089ec15-91d7-4924-9396-2abdb7ee8a84. The event was organized as an effort to educate the public and raise awareness as to the divisive nature of the national motto and advocate for changing it to the traditional motto, "E Pluribus Unum." *Id.* DFWI never asked MA to estimate the size of the event. *See* Word Decl., ¶ 9.

8.      After Metroplex Atheists' banners went up, both the City and DFWI received numerous complaints. Wiley, *supra*. In response to the backlash, both DFWI and then-Mayor Betsy Price explained that Metroplex Atheists had "follow[ed] the policies and procedures set forth by the City & Downtown Fort Worth, Inc." Betsy Price, TWITTER (July 2, 2019, 3:28 PM), https://twitter.com/BetsyPriceftw/status/1146138702843908101; Wiley, *supra*.

9.      In October 2022, Metroplex Atheists was again planning an educational event at the Fort Worth Botanic Garden, this time aimed at educating the public about the dangers posed by Christian Nationalism and the gains the movement was making in imposing its will on the public schools. *See* Word Decl. at ¶ 10. Randy Word,

a member of the organization's Board of Directors, and Terry McDonald, MA's Treasurer, reached out to DFWI to begin the application process of reserving a block of time when the banners would be displayed and KayLee Pratt sent them a partially complete contract indicating the banners would be displayed from August 8 through August 22, 2023 (the 2023 Banner Application). *See* Word Decl. at ¶ 11; MA Appendix at Pla. Appx. 0028-30. MA provided the necessary information on the contract and returned it to Ms. Pratt soon thereafter. *See* Word Decl. at ¶ 12.

10.     On November 22, 2022, Ms. Pratt emailed Randy and Terry to inform them that she was almost ready to "sign the contract and send the invoice" but that she first needed documentation of MA's nonprofit status verification of the date of the event. *See id.* at ¶ 13; MA Appendix at Pla. Appx. 0032. MA provided the required information—including the fact that this event (like the event MA Organized in 2019) would be held at the Fort Worth Botanic Garden—but never received the signed contract or a final invoice. *See id.* at ¶¶ 14-15. At no time was MA asked to estimate the size of the planned event. *See* id. at ¶ 34.

11.     Six months later, on May 19, 2023, MA learned from Ms. Pratt that the 2023 Banner Application was denied and that the 2019 Banner Policy had been "tweaked" since MA last participated in the Banner Forum. *See id.* at ¶ 16. Mr. Word submitted a records request seeking copies of the 2019 Banner Policy, the 2023 Banner Policy, and copies of any proposed changes to the 2019 Banner Policy. *See id.* at ¶ 17. In response, Judy Burns at the Fort Worth Department of Transportation and Public Works provided a copy of the agreement between the City and DFWI, the 2023

Banner Policy, a policy governing an unrelated banner program, and the form used to participate in the unrelated banner program. *See id.* at ¶¶ 18-19; MA Appendix at Pla. Appx. 0033-46. The 2023 Banner policy is substantively identical to the 2019 Banner Policy.

12.     In a subsequent conversation, Ms. Pratt informed Mr. Word that the denial of MA's 2023 Banner Application had come from Defendant William Johnson, Assistant City Manager and Director of the Department of Transportation and Public Works. *See* Word Decl. at ¶ 21. Mr. Word was eventually able to obtain Mr. Johnson's contact information and arranged an in-person meeting between Defendant Johnson, Terry McDonald, and himself in which Defendant Johnson informed Terry and Randy that the 2023 Banner Application had been denied because it was not of sufficient "magnitude" to qualify. *See id.* at ¶¶ 22-23. Defendant Johnson would not or could not provide them any additional information about the "magnitude" requirement that now seemed to be part of the 2023 Banner Policy so Mr. Word submitted several records requests to both DFWI and the City. *See id.* at ¶¶ 23-29. His request to DFWI, which he sent to Ms. Pratt, sought information about applications by other nonprofits to participate in the Banner Forum in 2022 and 2023 and the events those banners advertised. *See id.* at ¶ 24. Ms. Pratt at DFWI responded that such a request would have to go through the City's records request procedures so Mr. Word dutifully submitted a request for the same information to the City but was told that the City had no responsive records and he should contact Defendant DFWI. *See id.* at ¶¶ 24, 29. In a separate records request, Mr. Word sought, among other things, a copy of the

email from Defendant Johnson to KayLee Pratt denying the 2023 Banner Application and any emails between Defendants Johnson and DFWI that mentioned Metroplex Atheists. *See id.* at ¶ 25. Although he subsequently narrowed portions of his request, the City has never produced any responsive records, including the email from Defendant Johnson denying the 2023 Banner Application. *See id.* at ¶¶ 26-28.

13.     On June 2, 2023, pursuant to the 2023 Banner Policy § 1-67, Mr. Word contacted Lauren Prieur at the Fort Worth Department of Transportation and Public Works to appeal the denial. *See id.* at ¶ 30; MA Appendix at Pla. Appx. 0056-57. Nearly two weeks later, on June 14, 2023, Ms. Prieur responded that the appeal would be taken up by the City Council in a closed session on June 27, 2023. *See* Word Decl. at ¶ 31; MA Appendix at Pla. Appx. 0056. After the City Council met on June 27, Mr. Word again wrote to Ms. Prieur to learn the outcome of the meeting and was informed by her that the denial would be upheld, that the City Council would be reviewing the 2023 Banner Policy, that a moratorium had been put in place on any new banners, and that the committee designated to hear appeals under the 2023 Banner Policy no longer existed. *See* Word Decl. at ¶¶ 32-33; MA Appendix at Pla. Appx. 0058.

14.     Seeking clarification, Plaintiff's Counsel, Katherine McKerall and Geoffrey T. Blackwell, arranged a phone call with Fort Worth Deputy City Attorney Laetitia Coleman Brown on June 30, 2023. *See* Blackwell Decl. at ¶ 3. City Attorney Brown informed Plaintiff's Counsel that MA's 2023 Banner Application prompted the City Council to review the policy in order to "tighten it up" and "look at how[the City has] been allowing the program to operate through third parties." *See id.* at ¶ 4. When

7

asked what Ms. Prieur meant that a moratorium was placed on new banners, Brown stated that all banner applications that had been approved for display in the month of July, including banners promoting Texas Christian University's football team, would be displayed and that it was "possible that, starting in August, all banners, even those previously approved, may be cancelled." See id. at ¶ 5. Summarizing the current state of affairs, she stated that "we have decided, as a city administration rule, we will not take any new applications pursuant to it. Or we will not approve any new applications pursuant to it." *See id.* at ¶ 6. When asked to clarify what the status currently is or would be for any applications to display banners after July, Ms. Brown stated that the applications would be kept pending until the City Council reached a decision but reiterated that Metroplex Atheists' 2023 Banner Application remained denied and was not kept pending. *See id.*

15.     Metroplex Atheists has procured banners and is prepared to participate in the Banner Forum as planned if the City rescinds the denial of MA's 2023 Banner Application. *See* Word Delc. at ¶ 35.

## **PRELIMINARY INJUNCTION STANDARD**

16.     Although a preliminary injunction is an "extraordinary remedy," but is appropriate where the movant shows 1) likelihood of success on the merits, 2) likelihood of irreparable harm to the movant if the relief is not granted, 3) the balance of equities supports granting the relief, and 4) granting the relief is in the public interest. *Rest. Law Ctr. v. United States DOL*, 66 F.4th 593, 597 (5th Cir. 2023); *see also Ramirez v. Collier*, ___ U.S. ___, 142 S. Ct. 1264 (2022); *Winter v. NRDC, Inc.*, 555

U.S. 7 (2008). Where the government is a party, the third and fourth elements "merge." *Nken v. Holder*, 556 U.S. 418, 435 (2009) (applying the same analysis in the context of a stay); *Texas v. United States*, 809 F.3d 134, 187 n.204 (5th Cir. 2015).

17.     Although preliminary injunctions are generally characterized as a mechanism for preserving the status quo, there is no "particular magic in the phrase 'status quo.'" *Canal Auth. of Fla. v. Callaway*, 489 F.2d 567, 576 (5th Cir. 1974). The availability of the preliminary injunction as a judicial tool "to preserve the court's ability to render a meaningful decision on the merits." *Id.* Where circumstances brought about by the defendant are such that protecting the status quo is not sufficient to protect against irreparable harm to the plaintiff and preserve the case for litigation, a preliminary injunction directing the defendants to take affirmative action that alters the status quo is warranted. *Id.*

18.     The circumstances of this case warrant the grant of a mandatory preliminary injunction. Absent such preliminary relief, Metroplex Atheists will be unconstitutionally precluded from participating in the limited public forum created by the City of Fort Worth while other, similar entities are allowed to continue participating in the forum.

## ARGUMENT & AUTHORITIES

19.     Metroplex Atheists seeks a preliminary injunction directing the Defendants to comply with the City of Fort Worth's Banner Policy and Procedures and permit MA to participate in the Banner Forum by displaying MA's banners promoting its upcoming event educating the public on the dangers of Christian Nationalism in

accordance with the agreement between Metroplex and DFWI. The Defendants' exclusion of MA from the Banner Forum constitutes a content-based restriction on speech and viewpoint discrimination that is presumptively unconstitutional. MA is likely to succeed on its free speech claim and will suffer irreparable harm if the Defendants succeed in excluding MA from the Banner Forum. The balance of equities and the public interest weigh heavily in favor of granting a mandatory preliminary injunction.

I.   **The Plaintiff is likely to succeed on the merits of its claim.**

A.   *The Banner Policy created a limited public forum.*

20.   The Defendants, through the Banner Policy and Procedures, created a limited public forum. The City opened up its street poles for the public to engage in expressive activity in the form of banners promoting specific upcoming events held by nonprofit organizations. Because it opened its street poles for expressive activity in the form of banners promoting events, the First Amendment restricts the City's ability to pick and choose who may and may not participate in such a forum.

21.   When the government opens public property for expressive activity of a particular type or by particular groups, it creates a limited public forum. *Fairchild v. Liberty Indep. Sch. Dist.*, 597 F.3d 747, 758 (5th Cir. 2010); *see also Rosenberger v. Rector & Visitors of the Univ. of Va.*, 515 U.S. 819, 829 (1995). In a limited public forum, the government may limit participation in the forum to certain topics or to speakers "of similar character," *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 48 (1983); *see also Rosenburger*, 515 U. S. at 829, in order to "preserve the purposes of that limited forum." *Fairchild*, 597 F.3d at 758. The limited public

forum is distinct from a nonpublic forum in which the government alone speaks, either directly or through a private entity working in concert with the government in which the government has "meaningful involvement in the selection of the [speaker] or the crafting of their messages." *Shurtleff v. City of Boston*, ___ U.S. ___, 142 S. Ct. 1583, 1593 (2022).

22.     The City's Banner Forum constitutes a limited public forum. The City explicitly stated that the Banner Forum was to be utilized only by "non/not-for-profit organization[s]" and used solely "for the purpose of promoting the [participating] [o]rganization or a special event and/or exhibit held by the [o]rganization." *See* MA Appendix at Pla. Appx. 0041. In the case of organizations promoting specific events, the event in question "must be held in Fort Worth and be open to the public, or of common interest to the general community, or recognize and/or contribute to the cultural fabric of the City." *See id*. Organizations' requests to display banners at a given time were handled on a first-come, first-served basis. *See id*. at Pla. Appx. 0042. These limitations on the character of speaker—nonprofit organizations—as well as the purpose of the forum—to promote local events and organizations—typify a limited public forum. Further distinguishing the Banner Forum from a nonpublic forum for government speech, the City designated Defendant DFWI to administer the Banner Forum. *See* MA Appendix at Pla. Appx. 0060.

23.     Because the Banner Forum constituted a limited public forum, the First Amendment imposes a heavy burden on the Defendants when they act to exclude a participant from the forum.

B.   *The Defendants' imposition of a "magnitude" requirement is an unconstitutional prior restraint on MA's speech.*

24.   The Defendants' Banner Policy, *as written*, imposes narrow, objective, and definite standards on participation in the Banner Forum. The Defendants' *application* of that policy to Metroplex Atheists, however, deviated from the Policy. The City permitted Defendant William Johnson to impose a new, undefined "magnitude" requirement on Metroplex Atheists' participation in the Banner Forum and his action was subsequently endorsed by the Defendant City Councilmembers.

25.   Although the government may impose requirements such as applications, permits, or licensing on those wishing to participate in a public forum "in order to regulate competing uses," there is a "heavy presumption" against the imposition of such prior restraints. *Forsyth County v. Nationalist Movement*, 505 U.S. 123, 130 (1992). Where the government, "without narrow, objective, and definite standards," restricts expressive activity through the application of a prior restraint, the action is unconstitutional. *Chiu v. Plano Indep. Sch. Dist.*, 339 F.3d 273, 281 (5th Cir. 2003) (quoting *Southeastern Promotions, Ltd. v. Conrad*, 420 U.S. 546, 553 (1975)). Particularly where such decisions are "left to the whim of the administrator," the First Amendment forbids the restraint. *Nationalist Movement*, 505 U.S. at 133. "It has long been held that ordinances regulating speech contingent on the will of an official . . . are unconstitutional burdens on speech classified as prior restraints." *Chiu*, 339 F.3d at 280.

26.   The First Amendment forbids the Defendants from applying the Banner Policy to Metroplex Atheists in the manner they did. On their face, the Defendants'

Banner Policy and the DFWI Instructions *appear* to be a permissible prior restraint on speech. They contain narrow, objective, and definite standards for participation in the forum. These include requiring potential participants in the Banner Forum to document their nonprofit status, identify the specific event to be promoted using the banners (in the case of Off Site Banners), document their insurance coverage, and pay fees according to a clearly defined fee schedule. *See* MA Appendix at Pla. Appx. 0041-44. But, as Metroplex Atheists discovered, the requirements laid out in the Banner Policy and the DFWI Instructions do not contain all the requirements. Nowhere in these documents is there any hint that the *size* of the event promoted by the banners has any bearing on the ability of a local nonprofit organization to participate in the Banner Forum. No minimum number of expected attendees appears in the Banner Policy or the DFWI Instructions. The Banner Contract provided to applicants by DFWI does not even provide a way for an applicant to *provide* an estimate of the number of event attendees. *See* MA Appendix at Pla. Appx. 0030. Yet Defendant Johnson imposed a never-before-mentioned "magnitude" requirement on Metroplex Atheists' participation in the Banner Forum and deemed Metroplex Atheists' event to be wanting. *See* Word Decl. at ¶ 23. The other Defendants ratified that decision. *See id.* at ¶ 33; MA Appendix at Pla. Appx. 0058. The Defendants appear to have left the determination entirely to the subjective whims of Defendant William Johnson. These actions crossed a clear and long-standing constitutional line, and must be reversed in order to remedy the irreparable injury to Metroplex Atheists ability to engage in protected speech.

13

C.    The Defendants' actions constituted viewpoint discrimination and is presumptively unconstitutional.

27.    As the Supreme Court recently reiterated, "when a government does not speak for itself, it may not exclude speech based on 'religious viewpoint'; doing so 'constitutes impermissible viewpoint discrimination.'" *Shurtleff*, 142 S. Ct. at 1593, quoting *Good News Club v. Milford Central Sch.*, 533 U.S. 98, 112 (2001). "Viewpoint discrimination is . . . an egregious form of content discrimination. The government must abstain from regulating speech when the specific motivating ideology or the opinion or perspective of the speaker is the rationale for the restriction." *Rosenberger*, 515 U.S. at 829 (1995); *see also Robinson v. Hunt Cty.*, 921 F.3d 440, 447 (5th Cir. 2019); *Heaney v. Roberts*, 846 F.3d 795, 801-02 (5th Cir. 2017). The First Amendment "forbid[s] the State from exercising viewpoint discrimination, even when the limited public forum is one of its own creation." *Rosenberger*, 515 U.S. at 829 (1995); *see also Robinson*, 921 F.3d at 448.

28.    The Defendants' imposition of a never-before-mentioned "magnitude" requirement on Metroplex Atheists' 2023 Banner Application, Word Decl. at ¶ 23, is strong evidence on its own that the exclusion was motivated by the Defendants' disagreement with Metroplex Atheists' viewpoint. But the evidence goes further. At no point did either the City or DFWI obtain *or even seek* any estimate of the size of the event. *Id.* at ¶ 14. That being the case, even if an event's magnitude was established factor in whether an application to participate in the Banner Forum would be approved, Defendant Johnson had no information on which to base his assessment of the "magnitude" of the event and instead used it as a pretext to deny the 2023 Banner

14

Application.

29.     Furthermore, in the wake of MA's participation in the Banner Forum in 2019, the City and DFWI responded to complaints from members of the public by explicitly stating that MA had complied with the 2019 Banner Policy. Price, *supra*; Wiley, supra. That criteria for participation in the Banner Forum had not changed between 2019 and the date on which Defendant Johnson denied MA's 2023 Banner Application. *Compare* 2019 Banner Policy to 2023 Banner Policy. That being the case, and in light of the fact that MA's 2023 Banner Application was, in all relevant ways, identical to its 2019 Banner Application (even using the same space, the Fort Worth Botanic Garden, *see* Wiley, *supra*; Word Decl. at ¶ 14) the 2023 Banner Application cannot have been deficient, as Defendant Johnson claimed.

30.     Deputy City Attorney Brown's statements are also revealing. MA's application prompted the City Council to reassess the way the policy had been operating and MA's 2023 Banner Application was the only application the Defendants denied despite her statement that banners set to go up in July would be allowed and any other applications would be held pending until the City Council reassessed the Banner Policy. *See* Blackwell Decl. at ¶¶ 4-6.

31.     All of these facts lead inexorably to one conclusion: the Defendants did not want Metroplex Atheists to display its banners and promote its event because of the nature of the event and the viewpoints MA expressed. Such viewpoint discrimination cannot be permitted.

D.    *The Defendants' exclusion of MA from the Banner Forum was content-based and cannot be survive strict scrutiny.*

32.    In a limited public forum, the government "is bound by the same standards as apply in a traditional public forum." Although the government may impose "reasonable time, place, and manner regulations" on the use of the forum, "a content-based prohibition must be narrowly drawn to effectuate a compelling state interest." *Perry Educ. Ass'n*, 460 U.S. at 46. "A regulation that targets a sign because it conveys an idea about a specific event is no less content based than a regulation that targets a sign because it conveys some other idea." *Reed v. Town of Gilbert*, 576 U.S. 155, 171 (2015); *see also City of Austin v. Reagan Nat'l Adver. of Austin, LLC*, ___ U.S. ___, 142 S. Ct. 1464, 1471-72 (2022); *Reagan Nat'l Adver. of Austin, Inc. v. City of Austin*, 64 F.4th 287, 292 (5th Cir. 2023).

33.    The Defendants explicitly excluded Metroplex Atheists from the Banner Forum because of the content of their banners, namely that the event advertised was not large enough. Word Decl. at ¶ 23. Because the restriction was not content-neutral, the Defendants' purported "magnitude" requirement must be subjected to strict scrutiny. This the Defendants cannot do. No compelling government interest is advanced by excluding organizations promoting smaller events from the Banner Forum and the "magnitude" requirement cannot have been narrowly drawn to effectuate such an interest because the Defendants have *no objective criteria* for delineating between events that are sufficiently large from those that are not. Even if the Defendants did maintain some secret threshold for drawing such a line, they never sought information about the size of the advertised event so had no information to which they

could apply the criteria.

34.    Even if the exclusion of Metroplex Atheists from the Banner Forum was not an unconstitutional prior restraint (which it is) and was not a particularly inartful attempt to engage in viewpoint discrimination against an atheist group (which it also is), the exclusion of the organization from the Banner Forum would be unconstitutional as impermissible content discrimination and the Defendants' actions must be remedied.

## II.    The Plaintiff will suffer irreparable harm if the Court denies the motion.

35.    It is well settled that "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976); *see also Opulent Life Church v. City of Holly Springs, Miss.*, 697 F.3d 279, 295 (5th Cir. 2012) (citing *Elrod v. Burns* regarding irreparable injury caused by loss of First Amendment freedoms); *U.S. Navy Seals 1-26 v. Biden*, 27 F.4th 336, 348 (5th Cir. 2022) (violation of First Amendment Rights constitute irreparable harm); *Bronx Household of Faith v. Bd. of Educ. of City of N.Y.*, 331 F.3d 342, 349 (2d Cir. 2003) ("irreparable harm may be presumed" where plaintiffs challenge government limitations on speech).

36.    The likelihood of success on the merits and irreparable-harm requirements are inseparably linked in the First Amendment context as when a plaintiff satisfies the former, so too do they meet the latter. *See Opulent Life Church*, 697 F.3d at 295 ("Opulent Life has satisfied the irreparable-harm requirement because it has alleged violations of its First Amendment … rights"); *see also BST Holdings, L.L.C.*

17

*v. OSHA*, 17 F.4th 604, 618 (5th Cir. 2021) (finding irreparable harm absent stay as vaccine mandate "threatens to substantially burden the liberty interest of reluctant individual recipients put to a choice between their job(s) and their jab(s)); *Sambrano v. United Airlines, Inc.*, 19 F.4th 839, 841-42 (5th Cir. 2021) (Ho, J., dissenting from denial of rehearing en banc) (explaining that First Amendment violation is a "quintessentially irreparable injury, warranting preliminary injunctive relief").

37.     MA seeks to advertise an event that was nearly a year in the making and the organization's promotional banners were scheduled to be on display in a few short weeks. *See* Word Decl. at ¶¶ 11, 14. Obtaining a final adjudication in this matter will almost certainly take longer than that, in effect denying MA any possibility of a remedy for the violation of its freedom of speech. A preliminary injunction is necessary to ensure that MA is not denied the protection from irreparable harm that the First Amendment is intended to provide. Because the Defendants' actions resulted in circumstances in which protecting the status quo is not sufficient to protect MA against irreparable harm and preserve the case for litigation, the mandatory preliminary injunction sought here is warranted.

## III.    The balance of equities and public interest favor the injunction sought by Plaintiff.

38.     When a preliminary injunction is sought against the government, the judicial analysis of the third and fourth elements—the balance of equities and whether the injunction is in the public interest—merge. *Nken*, 556 U.S. at 435. Where the injunction sought protects against government intrusion into a constitutional right and the plaintiff has demonstrated irreparable injury, the burden shifts to the

state to "present powerful evidence of harm to its interest to prevent" a plaintiff "from meeting this requirement." *Opulent Life Church*, 697 F.3d at 297.

39.     Any asserted countervailing government interest in excluding Metroplex specifically from participating in the Banner Forum is undercut by allowing banners to fly through the end of July, keeping other applications *pending*—not denied—and the fact that the Banner Forum program has existed in its current form for, *at minimum*, 13 years, *see* MA Appendix at Pla. Appx. 0035-40. Permitting Metroplex Atheists to participate in the Banner Forum as other entities have done for more than a decade does no harm to any interest of the Defendants.

## IV.     Granting the preliminary injunction the Plaintiff seeks is in the public interest.

40.     As in the balance of equities analysis, the fact that the Defendants' actions imperil MA's First Amendment free speech right makes this determination straightforward, as "[i]njunctions protecting First Amendment freedoms are always in the public interest." *Opulent Life Church*, 697 F.3d at 298 (quoting *Christian Legal Soc'y v. Walker*, 453 F.3d 853, 859 (7th Cir. 2006) (applying the same principle to RLUIPA claim)).

## CONCLUSION AND PRAYER FOR RELIEF

41.     Plaintiff Metroplex Atheists is likely to prevail on the merits of its claims and will continue to face irreparable harm absent the issuance of a preliminary injunction. For the reasons set forth above, this Court may and should issue a preliminary injunction directing the Defendants to permit Metroplex Atheists' participation in the Banner Forum by:

1.  Rescinding the discriminatory denial of MA's application to display, between August 8 and August 22, 2023, banners in downtown Fort Worth promoting its upcoming event educating the public on Christian Nationalism (the 2023 Application);

2.  Approving the 2023 Application; and

3.  Displaying MA's banners in accordance with the completed contract MA provided to DFWI on or around October 24, 2022.

Dated: July 17, 2023                 Respectfully submitted,

**GLAST, PHILLIPS & MURRAY, P.C.**

By:  */s/ M.E. Furse*
    **Matthew E. Furse**
    State Bar No. 24105032
    MFurse@GPM-Law.com
    **Lawrence S. Fischman**
    State Bar No. 07044000
    LFischman@GPM-Law.com
    **Robert N. Loughran**
    State Bar No. 24111197
    RLoughran@GPM-Law.com
    14801 Quorum Dr., Ste. 500
    Dallas, Texas 75254-1449
    Tel. (972) 419-8300
    Fax. (972) 419-8329

    -and-

**AMERICAN ATHEISTS, INC.**
    **Geoffrey T. Blackwell**
    (PA Bar No. 319778)*
    1517 N. Stillman St., Unit 2
    Philadelphia, PA 19121
    Phone: (908) 603-8787
    gblackwell@atheists.org

    *Counsel to Plaintiff,*
    **METROPLEX ATHEISTS**

\* *Application for pro hac vice admission forthcoming.*

21