## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

|  |  |
|---|---|
| METROPLEX ATHEISTS,<br>                                    *Plaintiff,*<br><br>v.<br><br>CITY OF FORT WORTH,<br>DOWNTOWN FORT WORTH, INC.,<br>MATTIE PARKER,<br>CARLOS FLORES,<br>MICHAEL D. CRAIN,<br>CHARLES LAUERSDORF,<br>GYNA BIVENS,<br>JARED WILLIAMS,<br>MACY HILL,<br>CHRIS NETTLES,<br>ELIZABETH M. BECK,<br>ALAN BLAYLOCK,<br>JEANETTE MARTINEZ,<br>DAVID COOKE,<br>WILLIAM JOHNSON, *each in their<br>individual and official capacities,*<br>                                    *Defendants.* | No. 4:23-cv-736-O<br><br>**JURY TRIAL DEMANDED** |

## PLAINTIFF'S REPLY IN SUPPORT OF ITS MOTION FOR
## <u>TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION</u>

## TABLE OF CONTENTS

Introduction .................................................................................................... 1

Argument ....................................................................................................... 3

   I.   The Banner Forum is a limited public forum, not government speech. ............ 3

     A.   The City exercises no control over the ideas expressed by banners displayed as part of the Banner Forum. ................................................................. 4

     B.   The history of the Banner Forum demonstrates that it does not constitute government speech. ...................................................................... 6

     C.   The public would not interpret the messages conveyed through the Banner Forum as government speech.................................................................... 8

   II.   The Defendants' actions constitute an impermissible prior restraint on speech. ..................................................................................................... 9

   III.   The City's imposition of a "magnitude" restriction is viewpoint discrimination by another name........................................................................................ 11

   IV.   Metroplex Atheists will suffer an irreparable harm absent the requested preliminary injunction. .......................................................................... 13

   V.   No meaningful distinction exists between DFWI and DFWII for the purpose of Plaintiff's claims..................................................................................... 15

## Cases

*Bd. of Regents v. Southworth*, 529 U.S. 217 (2000) ..................................................... 12

*Brentwood Acad. v. Tenn. Secondary Sch. Ath. Ass'n*, 531 U.S. 288 (2001) ............. 16

*Bronx Household of Faith v. Bd. of Educ. of City of N.Y.*, 331 F.3d 342 (2d Cir. 2003) ................................................................................................................. 14

*Capitol Square Rev. & Advisory Bd. v. Pinette*, 515 U.S. 753 (1995) ......................... 4

*Chiu v. Plano Indep. Sch. Dist.*, 339 F.3d 273 (5th Cir. 2003).............................. 9, 10

*Church of Lukumi Babalu Aye v. City of Hialeah*, 508 U.S. 520 (1993)................... 11

*Edmonson v. Leesville Concrete Co.*, 500 U.S. 614 (1991)........................................ 16

*Elrod v. Burns*, 427 U.S. 347 (1976) ................................................................... 14, 15

*Evans v. Newton*, 382 U.S. 296 (1966) ..................................................................... 16

*Fairchild v. Liberty Indep. Sch. Dist.*, 597 F.3d 747 (5th Cir. 2010) ........................... 3

*Forsyth County v. Nationalist Movement*, 505 U.S. 123 (1992) ............................. 9, 10

*Good News Club v. Milford Cent. Sch.*, 533 U.S. 98 (2001) ................................... 3, 6

*Masterpiece Cakeshop, Ltd. v. Colo. Civil Rights Comm'n*, ___ U.S. ___, 138 S. Ct. 1719 (2018) ............................................................................................................ 11

*Matal v. Tam*, 582 U.S. 218 (2017) ............................................................................. 5

*Minn. Voters All. v. Mansky*, ___ U.S. ___, 138 S. Ct. 1876 (2018) ............................. 6

*Murdock v. Pennsylvania*, 319 U.S. 105 (1943). ............................................. 1, 4, 12

*Opulent Life Church v. City of Holly Springs, Miss.*, 697 F.3d 279 (5th Cir. 2012).. 14

*Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37 (1983) ..................... 6

*Pleasant Grove City v. Summum*, 555 U.S. 460 (2009) ............................................. 4, 5

*Shurtleff v. City of Boston*, ___ U.S. ___, 142 S. Ct. 1583 (2022) .................... 1, 4, 6, 8

*Southeastern Promotions, Ltd. v. Conrad*, 420 U.S. 546 (1975) ................................. 9

*U.S. Navy Seals 1-26 v. Biden*, 27 F.4th 336 (5th Cir. 2022).................................... 14

*Walker v. Tex. Div., Sons of Confederate Veterans, Inc.*, 576 U.S. 200 (2015).............5

*West v. Atkins*, 487 U.S. 42 (1988) ................................................................................... 16

**Statutes**

42 U.S.C. § 1983............................................................................................................... 3

**Other Authorities**

*About Us*, DFWI, https://www.dfwi.org/about ............................................................ 17

Betsy Price, TWITTER (July 2, 2019, 3:28 PM),
    https://twitter.com/BetsyPriceftw/status /1146138702843908101.......................... 7

Betsy Price, TWITTER (July 2, 2019, 3:28 PM),
    https://twitter.com/BetsyPriceftw/status/1146138703473102848.......................... 7

David R. Brockman, *In No God We Trust?*, TEXAS OBSERVER (July 24, 2019,
    6:00 AM), https://www.texasobserver.org/in-no-god-we-trust/ .............................. 10

*Downtown Banner Program*, DFWI, https://www.dfwi.org/about
    /banner-program ................................................................................................. 8, 15

# INTRODUCTION

> Plainly a community may not suppress, or the state tax, the dissemination of views because they are unpopular, annoying or distasteful. If that device were ever sanctioned, there would have been forged a ready instrument for the suppression of the faith which any minority cherishes but which does not happen to be in favor. That would be a complete repudiation of the philosophy of the Bill of Rights.

*Murdock v. Pennsylvania*, 319 U.S. 105, 116 (1943).

Plaintiff Metroplex Atheists alleges that the Defendants, City of Fort Worth (the City) and Downtown Fort Worth, Inc. (DFWI), excluded it from the Downtown Banner Program (the Banner Forum), a limited public forum operated by the Defendants, and that the Defendants' exclusion of Metroplex Atheists constituted an impermissible prior restraint on speech, viewpoint discrimination, and a content-based restriction on speech. Metroplex Atheists provided significant evidence to show that it was likely to succeed on the merits of its claims, that it would suffer irreparable harm if the Defendants' actions were not corrected, that the balance of equities favors granting Metroplex Atheists a preliminary injunction, and that such an injunction would be in the public interest.

In response, the City does not contest that Metroplex Atheists would suffer irreparable harm if the Defendants' actions are not corrected, that the balance of equities favors granting a preliminary injunction, and that such an injunction would be in the public interest. The City contests only the Plaintiff's argument that it is likely to succeed on the merits. Using a deeply flawed interpretation of the Supreme Court's recent decision in *Shurtleff v. City of Boston*, ___ U.S. ___, 142 S. Ct. 1583 (2022), the City argues that Metroplex Atheists' claims will fail because the Banner

Forum is governed by "an explicit policy governing all aspects of the Banner Program's administration" (the Banner Policy) and therefore constitutes government speech, not a limited public forum. The City further argues that the Defendants' exclusion of Metroplex Atheists was not viewpoint discrimination.

DFWI, for its part, advances two arguments: first, that Metroplex Atheists cannot demonstrate irreparable harm because DFWI does not think the banners, as designed, adequately promote an event and therefore Metroplex Atheists loses nothing by being excluded from the Banner Forum; and, second, that Defendant Downtown Fort Worth, Inc., is a distinct legal entity from Downtown Fort Worth Initiatives, Inc. (DFWII), and therefore the Plaintiff cannot prevail on the merits of its claims against DFWI.

Even a cursory examination of the record, *including the Defendants' own evidence*, shows that the Defendants do not have a leg to stand on. The text of the Banner Policy, as well as the official statements of the City and DFWI in 2019 and the declarations of Mr. Johnson and Mr. Taft, show that the Banner Forum is indeed a limited public forum and governed by the First Amendment. That being the case, the Defendants failed to contest that DFWI's decision to single out for extra scrutiny Metroplex Atheists' application to participate in the Banner Forum, Mr. Johnson's resulting denial of that application, and the City Council's subsequent ratification of that decision, comprised anything other than an impermissible prior restraint on speech, motivated by Metroplex Atheists' viewpoint. The declaration offered by Mr. Johnson himself *conclusively demonstrates* that this was the case. Mr. Johnson's

2

statements also demonstrate that, contrary to the City's argument, the exclusion of Metroplex Atheists from the Banner Forum amounted to viewpoint discrimination.

Finally, Defendant DFWI's argument that DFWII, not DFWI, is the named contractor in the Banner Program Management Agreement and therefore DFWI has no role to play is belied by Mr. Taft's statement, in his capacity as the president of both DFWI and DFWII, that *both* entities take part in the administration of the Banner Forum, as well as DFWI's concession that its employees handle every stage of the application process. Any distinction that exists between DFWI and DFWII is a distinction without a difference for the Plaintiff's claims under 42 U.S.C. § 1983.

## ARGUMENT

### I.    The Banner Forum is a limited public forum, not government speech.

The City argues that, because it "has an explicit policy governing all aspects of the Banner Program's administration," the Banner Forum amounts to government speech. *See* Dkt. # 18 at 8. This argument not only demonstrates a breathtaking misunderstanding of public forum jurisprudence, but it flies in the face of the City's own official statements and the sworn testimony it now offers to this Court.

By their very nature, limited public forums are generally governed by thorough, objective policies aimed at preserving the forum for its intended use. *See Good News Club v. Milford Cent. Sch.*, 533 U.S. 98, 108 (2001) (school district's community-use policy governed a limited public forum); *Fairchild v. Liberty Indep. Sch. Dist.*, 597 F.3d 747, 759-60 (5th Cir. 2010) (public comment period during school board meetings, governed by policy, constitute a limited public forum). It is certainly

true that creating a limited public forum *without* such a policy in place is one of the ways municipalities find themselves facing lawsuits alleging censorship,[1] but the mere existence of such a policy does not transform the messages delivered via these fora into government speech.[2] Distinguishing government speech from government regulation of private speech entails a "holistic inquiry" of criteria including (though not necessarily limited to): 1) "the history of the expression at issue; [2] the public's likely perception as to who (the government or a private person) is speaking; and [3] the extent to which the government has actively shaped or controlled the expression." *Shurtleff*, 142 S. Ct. at 1589-90.

It is undoubtedly true that there are circumstances in which it can be difficult to distinguish government speech from private speech utilizing a government-run forum. *Pleasant Grove City v. Summum*, 555 U.S. 460, 470 (2009). In the present case, however, the argument is not even close.

A.   The City exercises no control over the ideas expressed by banners displayed as part of the Banner Forum.

The City devotes little, if any, of its argument to the first two criteria, focusing

---

[1] Other ways of winding up in court defending against free speech claims include leaving the decision making to the whims of individual government officials and imposing restrictions not included in the policy. *See* Parts II and III, below.

[2] If the City contends that the messages delivered by the Downtown Banner Program are *government* speech, then the Plaintiff is likely to prevail on its Establishment Clause claim by virtue of the City promoting Christian groups, such as Kenneth Copeland Ministries, while excluding groups whose beliefs are in the minority. *See Capitol Square Rev. & Advisory Bd. v. Pinette*, 515 U.S. 753, 764 (1995) ("government action discriminating in favor of private religious expression or activity" violates the Establishment Clause); *Murdock*, 319 U.S. at 116.

4

almost exclusively on the extent of its control over the Banner Forum. In doing so, it misconstrues the nature of the analysis to a significant degree. The third criterion for distinguishing private speech in a limited public forum from government speech is whether the government "'has effectively controlled *the messages conveyed* by exercising final approval authority over their selection.'" *Walker v. Tex. Div., Sons of Confederate Veterans, Inc.*, 576 U.S. 200, 213 (2015) (quoting *Summum*, 555 U.S. at 473) (cleaned up) (emphasis added). *Walker* "likely marks the outer bounds of the government-speech doctrine." *Matal v. Tam*, 582 U.S. 218, 238 (2017). In *Matal*, the Supreme Court determined that granting a trademark did not constitute government speech. "The Federal Government does not dream up these marks, and it does not edit marks submitted for registration. Except as required by the statute involved here, . . . an examiner may not reject a mark based on the viewpoint that it appears to express." *Id.* at 235.

In each of these cases, the government exercised control over the *idea being expressed*. The City argues that the Banner Policy similarly renders the Banner Forum government speech. *See* Dkt. # 18 at 8. In the City's words, that policy "sets limits on who can participate (nonprofits), what the banners can promote (organizations or events), banner placement (off-site versus on-site), banner size, the size of logos/trademarks that may appear on the banner, how the banners can be mounted to the poles, who can perform the installation and when, etc." *See id.* at 8-9. None of these criteria govern *the ideas expressed* by the banners. Rather, they amount to little more than the basic time, place, and manner restrictions that have long been

5

acceptable regulations for the administration of public fora, *see Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 45 (1983); *Minn. Voters All. v. Mansky*, ___ U.S. ___, 138 S. Ct. 1876, 1885 (2018), coupled with permissible controls intended to preserve the purpose for which the government established the limited public forum, *see Good News Club*, 533 U.S. at 106. Nothing in the Banner Policy controls the ideas being expressed by the banners. Even where the City receives competing applications to display banners on the same lampposts during the same time period, the City's Banner Policy gives it *no discretion* to choose its preferred event or indeed use any subjective criteria to make a selection. Instead, the Banner Policy states that "[i]n the event of dual requests, the application with the earliest postmark will be given first consideration, unless one of the Organizations has received prior approval, in which case they will retain first right of refusal." *See* Metroplex Atheists' Appendix in Support of Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction (MA Appendix) at Pla. Appx. 0042. In short, nothing in the Banner Policy fits the criteria for government speech.

B.    The history of the Banner Forum demonstrates that it does not constitute government speech.

The first of the criteria for distinguishing private speech in a limited public forum from government speech entails an examination of "the history of the expression at issue." *Shurtleff*, 142 S. Ct. at 1589. The City's own statements, both in 2019 and in response to the pending motion, demonstrate that the history of the Banner Forum is one of private expression by private entities, not a means for the government to express its own ideas.

When Metroplex Atheists successfully participated in the Banner Forum in 2019, then-Mayor Betsy Price stated that the organization had "follow[ed] the policies and procedures set forth by the City and Downtown Fort Worth, Inc." Betsy Price, TWITTER (July 2, 2019, 3:28 PM), https://twitter.com/BetsyPriceftw/status /1146138702843908101. Mayor Price went on to acknowledge the private nature of the speech, stating that the City "must respect freedom of speech." Betsy Price, TWITTER (July 2, 2019, 3:28 PM), https://twitter.com/BetsyPriceftw/status /1146138703473102848. Mayor Price helpfully attached the City of Fort Worth's official statement on the matter, which pointed out that the City placed no restrictions on religious messaging as long as the proper procedures are followed and that, "[i]f an organization meets the established criteria for purchasing the banners, the city cannot discriminate or *dictate the content* unless it contains profanity, threats or other inappropriate images." *Id.* (emphasis added).

As if that were not enough to demonstrate that the Banner Forum is, in fact, a forum for private expression, the City's own affiant, Assistant City Manager William Johnson, states as much. According to him, the Banner Policy:

> provides that certain street light poles (or lampposts) may under certain circumstances be *used by approved nonprofit organizations* to hang certain banners to promote certain events or exhibits designed to benefit the public and the City. It is my understanding that *the public would otherwise have no right* at all to use such lampposts to display banners."

He does not state that *the government* is using the lampposts. The Banner Policy enables "*the public* . . . to use such lampposts to display banners."

Defendant DFWI also regards the program it administers as a venue for private speech. It describes the Banner Forum as "an excellent way for your non-

profit organization to reach" the "[t]housands of people [who] live, work and play in Fort Worth every day." *Downtown Banner Program*, DFWI, https://www.dfwi.org/about/banner-program (accessed on August 2, 2023).

The City cannot credibly claim that the Banner Forum is actually little more than a means for government expression after it and DFWI have spent years operating the program as a means for private entities to advertise to the public.

C.   The public would not interpret the messages conveyed through the Banner Forum as government speech.

The City rightly devotes almost no argument to the idea that the public would interpret the banners displayed on lampposts as part of the Banner Forum as government speech. What it does argue stretches the Supreme Court's holding in *Shurtleff* beyond the breaking point. The City characterizes the Supreme Court's analysis of flags flown from flagpoles in front of Boston's City Hall as "flying a piece of cloth from government-owned poles" and goes on to infer that hanging advertisements from lampposts distributed around the downtown area is qualitatively equivalent. Never mind that "flags symbolize civilization," *Shurtleff*, 142 S. Ct. at 1590, while ads hung from lampposts do not. For members of the public to misconstrue the Banner Forum as a means for government speech, they would have to ignore the public statements both the City and DFWI have made disclaiming the idea that the banners constitute government speech and the widely publicized prior incident in which Metroplex Atheists used the poles, to say nothing of the many years the program has existed advertising events for other nonprofits. *See* Part I(B), above. Just because the City wishes to ignore those facts does not mean that this

8

Court must presume the public would do the same.

In short, the City has provided *no facts* that support its defense that the Banner Forum constitutes government speech. Rather, all the evidence in the record leads inexorably to the conclusion that the Banner Policy creates a limited public forum and that the City and any entities it relies on to administer the forum (in this case, both Defendant DFWI as well as DFWII) are therefore bound by the Free Speech Clause of the First Amendment in the administration of that forum.

## II.   The Defendants' actions constitute an impermissible prior restraint on speech.

As the Plaintiff stated in its principal brief in support of the pending motion, the government may not impose prior restraints on speech "without narrow, objective, and definite standards." *Chiu v. Plano Indep. Sch. Dist.*, 339 F.3d 273, 281 (5th Cir. 2003) (quoting *Southeastern Promotions, Ltd. v. Conrad*, 420 U.S. 546, 553 (1975)). Particularly where such decisions are "left to the whim of the administrator," the First Amendment forbids the restraint. *Forsyth County v. Nationalist Movement*, 505 U.S. 123, 133 (1992). "It has long been held that ordinances regulating speech contingent on the will of an official . . . are unconstitutional burdens on speech classified as prior restraints." *Chiu*, 339 F.3d at 280.

The Defendants make no attempt to argue that the denial of Metroplex Atheists' application was anything other than a prior restraint, nor have they presented any argument that the "magnitude" restriction that the City ultimately imposed was in any way "narrow, objective, [or] definite." *Id.* at 281. Notably, the City's own summary of its "explicit policy governing all aspects of the Banner

9

Program's administration" is devoid of any mention of the size of the event promoted by the participating organizations. *See* Dkt. # 18 at 8. Nevertheless, Plaintiff is compelled to address this issue because the evidence provided by the City shows conclusively that the prior restraint had no "narrow, objective, [or] definite" criteria, *Chiu*, 339 F.3d at 281, and was, unequivocally, "left to the whim of the administrator," *Nationalist Movement*, 505 U.S. at 133.

Mr. Johnson's testimony is that he "do[es] not personally get involved every time someone submits an application" to participate in the Banner Forum but that in this instance "a lawyer from the City Attorney's office" brought Metroplex Atheists' application to his attention and that he denied it because, *in his opinion*, he "did not think that such an extremely small event should be allowed to participate in the Banner Program when, in [his] experience, it was designed only for much larger, more significant events." *See* Dkt. # 18, Exhibit 1 at 2-3. Neither the City nor Mr. Johnson provide any text in the Banner Policy that leads to that conclusion. Mr. Johnson merely states that "*during [his] employment with the City* [he] had never been aware of banners being used to promote any event anywhere nearly as small as that at issue in this case." *See id.* at 2. Never mind that the City had displayed Metroplex Atheists' banners promoting a substantially identical event just two months prior to Mr. Johnson commencing his employment with the City. David R. Brockman, *In No God We Trust?*, TEXAS OBSERVER (July 24, 2019, 6:00 AM), https://www.texasobserver.org/in-no-god-we-trust/. Mr. Johnson goes on to state that, in his opinion, "[i]t would not make sense for the City to allow any and every small

10

organization (such as homeowners associations, small hobby clubs, or whatever) to promote events that would be available only to a relatively very small number of people[.]" *See* Dkt. # 18, Exhibit 1 at 2.

Regardless of Mr. Johnson's views of what would "make sense," the policy places no restriction on the size of the advertised event. That much is made abundantly clear by the fact that the City Council is now considering amending the policy, *see id.* at 3, presumably to include just such a requirement in the policy so that it can be imposed on future applications.[3]

Mr. Johnson's imposition of his personal opinion into the policy, which the Fort Worth City Council subsequently ratified, *see id.*; Dkt. # 3-2 at ¶ 33, was precisely the sort of prior restraint that the Supreme Court and the Fifth Circuit have held to be presumptively invalid. On this basis alone, Metroplex Atheists is entitled to the preliminary injunction it seeks. Absent such relief, the constitutional prohibition against such restrictions would be utterly devoid of meaning.

## III.   The City's imposition of a "magnitude" restriction is viewpoint discrimination by another name.

Even if the decision to exclude Metroplex Atheists from the Banner Forum was not an impermissible prior restraint on speech (which it is), it would remain a clear example of viewpoint discrimination. "The whole theory of viewpoint neutrality is that minority views are treated with the same respect as are majority views. Access

---

[3] The City should be aware that the constitutionality of such a restriction would be highly suspect in light of the recent history of the Banner Forum. *See generally*, *Masterpiece Cakeshop, Ltd. v. Colo. Civil Rights Comm'n*, ___ U.S. ___, 138 S. Ct. 1719 (2018); *Church of Lukumi Babalu Aye v. City of Hialeah*, 508 U.S. 520 (1993).

to a public forum, for instance, does not depend upon majoritarian consent. That principle is controlling here." *Bd. of Regents v. Southworth*, 529 U.S. 217, 235 (2000); *see also Murdock*, 319 U.S. at 116. The government cannot give preference to speakers whose messages are popular or exclude messages that most of the public would rather not hear. "If that device were ever sanctioned, there would have been forged a ready instrument for the suppression of the faith which any minority cherishes but which does not happen to be in favor. That would be a complete repudiation of the philosophy of the Bill of Rights." *Murdock*, 319 U.S. at 116.

Yet again, the evidence offered by the City supports the Plaintiff's claims. Mr. Johnson did not decide that the application should be denied on the basis that the event was not "designed to benefit the public and the City," as he states the Banner Policy requires. *See* Dkt. # 18, Exhibit 1 at 1. Instead, Mr. Johnson states in his declaration that his decision to exclude Metroplex Atheists from the Banner Forum was the result of his determination that despite "any return or positive impact for the City" the event may have, promoting the Plaintiff's minority viewpoint "simply would not be worthwhile." *See id.* at 2. According to Mr. Johnson, only events that an indeterminately large number of people in the city would see fit to attend warrant the City's support. This is exactly the sort of restriction the Supreme Court warned against in *Murdock*.

It is of no moment that Mr. Johnson was not, himself, aware that he was assessing Metroplex Atheists' specific application at the time. According to his own sworn statement, he was not generally involved in approving or denying applications

to participate in the Banner Forum. *See id*. Something about Metroplex Atheists' application caused Defendant DFWI to depart from the normal practice and bring it to the attention of an unnamed "lawyer from the City Attorney's office." *See id*. at 3. That lawyer, presumably aware of Metroplex Atheists' identity and the prior incident in which it was permitted to display its banners for a qualitatively identical event, then brought the application to Mr. Johnson's attention to ask whether the Banner Forum could be used "to promote an event that was scheduled to last three hours on one day in a room that had a maximum occupancy of 100 persons." *See id*. Mr. Johnson decided that such an event was not in line with his (apparently severely limited) understanding of the Banner Forum and denied it on that basis, a basis having nothing to do with the City's actual Banner Policy. *See id*. The City Council, fully aware of Metroplex Atheists' identity and the complaints the City received in response to its prior banners, subsequently ratified that decision. *See id*. at 3-4. It did not deny any other pending applications, however. *See id*. It is holding those applications pending until it can devise a new Banner Policy, *see id.*—one that presumably will provide the City with at least a fig leaf to hide behind the next time it determines that it would not "make sense" for the City to provide a forum for an otherwise-qualified speaker, *see id*. at 2.

There is only one conclusion that can be reached from these facts—facts the City *does not contest*: Metroplex Atheists was excluded from the Banner Forum because of its viewpoint.

## IV.   Metroplex Atheists will suffer an irreparable harm absent the requested preliminary injunction.

As stated in its principal brief, Metroplex Atheists will be excluded from participation in a limited public forum and thereby suffer an irreparable injury as the result of the Defendants' actions if denied the preliminary injunction it seeks. The City does not contest this, but DFWI takes a different approach. Despite the law being clear that loss of First Amendment rights, even for brief periods, constitutes irreparable injury, *Elrod v. Burns*, 427 U.S. 347, 373 (1976); *see also Opulent Life Church v. City of Holly Springs, Miss.*, 697 F.3d 279, 295 (5th Cir. 2012) (citing *Elrod v. Burns* regarding irreparable injury caused by loss of First Amendment freedoms); *U.S. Navy Seals 1-26 v. Biden*, 27 F.4th 336, 348 (5th Cir. 2022) (violation of First Amendment Rights constitute irreparable harm); *Bronx Household of Faith v. Bd. of Educ. of City of N.Y.*, 331 F.3d 342, 349 (2d Cir. 2003) ("irreparable harm may be presumed" where plaintiffs challenge government limitations on speech), DFWI argues that because the Plaintiff's banners do not include, on their face, information that DFWI thinks should be present to convey that the banner advertises a discrete event, the Plaintiff is not losing an advertising opportunity as a result of the denial and therefore is not harmed by being excluded from the Banner Forum. *See* Dkt. # 19-1 at 3.2-3.3. "On this issue," DFWI contends, "the question is whether irreparable harm exists to promotion of the event if the banner, in the form Metroplex Atheists had it created, is not hung before the event." *See id.* at 3.3.

It is difficult to know where to begin when responding to an argument so completely disconnected from the constitutional violation at issue. "*The question*" is whether "First Amendment interests were either threatened or in fact being impaired

at the time relief was sought." *Elrod*, 427 U.S. at 373. DFWI's disagreement with Metroplex Atheists' advertising strategy has no bearing whatsoever on whether or not Metroplex Atheists will be irreparably harmed by its exclusion from the Banner Forum. DFWI claims that "[r]eview of the art of the subject banner . . . conclusively establishes that the takeaway by any objective observer is an idea—a political or quasi-religious statement—not an event." *See* Dkt. # 19-1 at 3.2. DFWI's conjecture as to what an "objective observer" would take away from the banner's design has no place in the analysis at hand. The City of Fort Worth has made a forum for expressive activity available to the public. That forum is administered by DFWI. Neither Defendant may pick and choose which viewpoints qualifying speakers may place before the forum's "observers," objective or otherwise. As a result of the Defendants' actions, Metroplex Atheists stands to lose a valuable opportunity to get itself, its ideas, and its event in front of the "very valuable audience" of people who "live, work and play in Fort Worth every day." *Downtown Banner Program*, DFWI, https://www.dfwi.org/about/banner-program (last accessed Aug. 2, 2023). That loss is all the Plaintiff need show to demonstrate irreparable harm in this case.

## V. No meaningful distinction exists between DFWI and DFWII for the purpose of Plaintiff's claims.

Finally, Defendant DFWI argues that Metroplex Atheists' claims against it cannot prevail because Downtown Fort Worth Initiatives, Inc., not Downtown Fort Worth, Inc., is the entity on behalf of which Mr. Taft signed the Banner Program Management Agreement. Defendant DFWI is under the mistaken impression that this somehow absolves it of any responsibility for the substantial part it admits it

plays in administering the Banner Forum. This is simply not the case.

A private entity can be a state actor—and therefore be bound by state and federal constitutional law—"when a private actor operates as a willful participant in joint activity with the State or its agents," "when it is controlled by an agency of the State," "when it has been delegated a public function by the State," or "when it is entwined with governmental policies or when government is entwined in its management or control." *Brentwood Acad. v. Tenn. Secondary Sch. Ath. Ass'n*, 531 U.S. 288, 296 (2001) (cleaned up) (quoting numerous precedents treating private entities as state actors). A private entity is delegated a public function when, either through contract or employment, it voluntarily assumes a duty otherwise held by the state. *West v. Atkins*, 487 U.S. 42, 56 (1988); *see also Edmonson v. Leesville Concrete Co.*, 500 U.S. 614, 628 (1991) (finding state action, even in the absence of a contractual relationship, where private litigants assist in the process of jury selection). A private entity is entwined with government policies or control when it is "endowed by the State with powers or functions governmental in nature." *Evans v. Newton*, 382 U.S. 296, 299 (1966).

DFWII voluntarily contracted with the City to administer the City's Banner Policy, a limited public forum, which had been in effect at least as early as March 12, 1998. *See* Dkt. # 19-2 at 13. Defendant DFWI, through whatever mechanism between the two entities, carried out DFWII's contractual obligation. According to Mr. Taft, both DFWI and DFWII conduct activities "supporting the [Banner Forum]." *See* Dkt. # 19-2 at ¶ 2. He further states:

16

> Downtown Fort Worth, Inc.'s personnel serve to fulfill the duties and requirements of Downtown Fort Worth Initiatives, Inc. to manage the Banner Program pursuant to the Banner Program Management Agreement. Accordingly, in doing so it is not uncommon for personnel to reference Downtown Fort Worth, Inc. as if it were the "Contractor," rather than Downtown Fort Worth Initiatives, Inc. However, Downtown Fort Worth Initiatives, Inc. has the contract with the City of Fort Worth concerning management of the Banner Program. Downtown Fort Worth, Inc. has no written agreement with the City of Fort Worth to manage the Banner Program.

*Id.* at ¶ 7. DFWI further states in its opposition brief that "Downtown Fort Worth, Inc.'s personnel assist Fort Worth in facilitating non-profits in accessing the banner program." *See* Dkt. # 19-1 at 3. It is DFWI that receives applications to participate in the Banner Forum and it was DFWI personnel who communicated with the Plaintiff at every stage of both its banner applications, *see* MA Appendix at Pla. Appx. 0003-32, 0047-49. It was DFWI, not DFWII, that invoiced the Plaintiff for the fees in connection with participation in the Banner Forum in 2019. *See id.* at Pla. Appx. 0027. DFWI's own website indicates that it is responsible for administering the Banner Forum while DFWII is described as a "corporation that provides a pathway for foundation grants, philanthropic donations and other contributions to help fund charitable, educational, and public-purpose Downtown projects." *About Us*, DFWI, https://www.dfwi.org/about (last accessed Aug. 2, 2023).

The City of Fort Worth itself sees no difference between the two entities. In his declaration, Mr. Johnson states "I am generally familiar with the fact that the City has an agreement with Downtown Fort Worth Inc. (DFWI) regarding the administration of the program in the downtown area." *See* Dkt. # 18, Exhibit 1, at 1. He later states:

> Although the City has an agreement with DFWI for that entity to primarily administer the Banner Program, and although I do not personally get involved every time someone submits an application to DFWI to hang banners, through historical custom and practice, it is my understanding and experience that DFWI looks to the City for guidance and consultation on occasion regarding a number of issues, including, sometimes, the Banner Program.

*See id.* at 2. Mr. Johnson later conveyed his opposition to Metroplex Atheists' banner application to "Andy Taft, President of DFWI." *See id.* at 3.

All these facts demonstrate that, regardless of the name of the entity on the Banner Program Management Agreement, Defendant DFWI is, in practice, (through some unknown mechanism between it and DFWII) responsible for administering the Banner Forum. Someone at DFWI singled out Metroplex Atheists' application to participate in the Banner Forum as somehow suspect and "looked to the City for guidance" regarding the Plaintiff's intended participation in the Banner Forum, *see id.* at 2, and it was DFWI's personnel who put force to Mr. Johnson's opinion by denying the Plaintiff's application. *See* Dkt. # 3-2 at 16; Dkt. # 18, Exhibit 1 at 3. Nothing saves DFWI from being held responsible for its own actions in this scheme.

## CONCLUSION

For the foregoing reasons, Plaintiff Metroplex Atheists respectfully requests that this Court grant it the preliminary injunction it seeks and thereby preserve its freedom of speech while the litigation proceeds.

**Respectfully submitted,**

**GLAST, PHILLIPS & MURRAY, P.C.**

By:   */s/ M.E. Furse*

18

**Matthew E. Furse**
State Bar No. 24105032
MFurse@GPM-Law.com
Lawrence S. Fischman
State Bar No. 07044000
LFischman@GPM-Law.com
**Robert N. Loughran**
State Bar No. 24111197
RLoughran@GPM-Law.com
14801 Quorum Dr., Ste. 500
Dallas, Texas 75254-1449
Tel. (972) 419-8300
Fax. (972) 419-8329

-and-

**AMERICAN ATHEISTS, INC.**
**Geoffrey T. Blackwell**
(PA Bar No. 319778)*
1517 N. Stillman St., Unit 2
Philadelphia, PA 19121
Phone: (908) 603-8787
gblackwell@atheists.org

*Counsel to Plaintiff,*
**METROPLEX ATHEISTS**

* *Application for pro hac vice admission pending.*

19