IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| METROPLEX ATHEISTS,<br>    *Plaintiff,*<br><br>v.<br><br>CITY OF FORT WORTH,<br>DOWNTOWN FORT WORTH<br>INITIATIVES, INC., and<br>DOWNTOWN FORT WORTH, INC.,<br><br>    *Defendants.* | No. 4:23-cv-00736<br><br>**JURY TRIAL DEMANDED** |

# **FIRST AMENDED COMPLAINT**

Plaintiff Metroplex Atheists ("MA"), a secular nonprofit organization in North Texas, by its undersigned counsel, brings this action against the City of Fort Worth, Texas (the "City"); Downtown Fort Worth, Inc. (DFWI); and Downtown Fort Worth Initiatives, Inc. ("DFWII"). Seeking to protect and vindicate its constitutional rights, Plaintiff states as its complaint against the above-captioned Defendants the following:

## **NATURE OF THE CLAIMS**

1. Plaintiff sought access to the City's Banner Forum, a limited public forum provided by the City to nonprofit organizations that wish to promote events. Plaintiff's event, planned for August 26, 2023, met all the requirements to be included in the Banner Forum. Yet Defendants denied Plaintiff the opportunity to promote the event, based solely on the event's content and viewpoint in violation of the First

Amendment of the United States Constitution. As a result of that denial, Plaintiff incurred expenses totaling $3,047 to advertise its event through different means.

2. This action challenges Defendants' policies, practices, and actions taken to censor Plaintiff's protected speech. Discriminating against Plaintiff's speech based on its content and particular message is textbook viewpoint discrimination and abridges Plaintiff's First Amendment rights under the Free Speech Clause of the United States Constitution.

## JURISTICTION & VENUE

3. This case arises under the First Amendment to the United States Constitution and presents a federal question within this Court's jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3). The Court has authority to issue a declaratory judgment under 28 U.S.C. § 2201 and to provide damages under 28 U.S.C. § 1343.

4. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(2) because the events giving rise to Plaintiff's claims occurred herein.

## PARTIES

5. The Plaintiff, Metroplex Atheists ("MA"), is a nonprofit 501(c)(3) organization incorporated in North Texas with a principal place of business at P.O. Box 121818 Arlington, Texas 76012. MA is a member organization whose purpose is to (1) educate its members and the public about the philosophy and social values of atheism and the nature and importance of separation of church and state, (2) to foster a community for members through regular meetings, and (3) to protect the civil rights

of atheists.[1] MA, as a nonprofit corporation, was harmed when Defendants' infringed on MA's First Amendment right to free speech by engaging in impermissible viewpoint discrimination. MA brings this suit on behalf of itself and its members.

6.   Defendant City of Fort Worth, Texas, (the "City") is a municipality in the State of Texas, within the counties of Tarrant, Denton, Parker, and Wise, and exists pursuant to the laws of the State of Texas.

7.   Defendant Downtown Fort Worth, Initiatives, Inc. is a 501(c)(3) nonprofit organization. DFWII entered into Banner Program Management Agreement (the Agreement) with the City to manage the Banner Forum on January 26, 2010. (See Exhibit #1). DFWII is responsible for ensuring banner content conforms to the City's Banner Policy. At all times relevant to this action, DFWII was a contractor of the City to administer the Banner Forum.

8.   Defendant Downtown Fort Worth, Inc. is a 501(c)(6) nonprofit organization that, through an arrangement with DFWII, fulfills the duties and requirements of DFWII under the Agreement.

9.   Andy Taft is the President of both DFWI and DFWII.

## FACTS

**The City's Banner Forum**

10.  Since 1998, the City opened space on downtown lamp posts for use by nonprofit organizations ("Organizations") to display banners (the "Banner Forum"). The banners are designed and paid for by the Organizations and may either promote

---

[1] By-Laws, METROPLEX ATHEISTS, https://www.metroplexatheists.org/by-laws/ (last visited July 6, 2023).

an Organization itself or, in the case of "off-site" banners, a "special event" being held by an Organization.

11. Section 1-61 of the "City of Fort Worth Banner Policy and Procedures" (the "1998 Banner Policy") lists the following requirements for participation in the Banner Forum:

> Only a non/not-for-profit organization (hereinafter referred to as "Organization") may request permission to place banners within the public ROW [right of way] for the purpose of promoting the Organization or a special event and/or exhibit held by the Organization. If promoting an event/exhibit, it must be held in Fort Worth and be open to the public, or of common interest to the general community, or recognize and/or contribute to the cultural fabric of the City. Such events/exhibits may include (but are not limited to): an arts, entertainment, or education related activity; a public social occasion; a sports contest; or a public concert.[2]

12. The 1998 Banner Policy contains no other threshold requirements for a special event or limitations on the content of the Organization's banners.

13. On August 22, 2023, after the events complained of herein, the Fort Worth City Council adopted a resolution rescinding the Banner Policy and replacing it with the Vertical and Overhead Street Banner Policy (the "2023 Banner Policy"), to go into effect on October 1, 2023.

14. In the August 22nd resolution, the Fort Worth City Council stated that the 1998 Banner Policy "allow[ed] non-profit organizations to use banners to promote the organization or events/exhibits held by the organization in the City which are

---

[2] City of Fort Worth Banner Policy and Procedures, Dep't. of Transp. and Pub. Works, available at https://ctycms.com/tx-fort-worth/docs/worth-policy-and-procedures---off-site-banners.pdf (last visited July 7, 2023); see also Downtown Banner Program, DOWNTOWN FORT WORTH INC., https://www.dfwi.org/about/banner-program#:~:text=Banners%20may%20be%20reserved%20for,org%20Downtown%20Fort%20Worth%2C%20Inc. (last visited July 7, 2023).

open to the public, of common interest, or recognize or contribute to the cultural fabric of the City[.]"

15.     At no time prior to the Plaintiff's 2023 application to participate in the Banner Forum had the City taken any measure to craft, edit, or otherwise curate the substance of the messages contained in the banners displayed by nonprofit organizations participating in the Banner Forum.

16.     Beginning in 2010, Defendants DFWII and DFWI took responsibility for administering the Banner Forum and ensuring that applications to participate in the program complied with the viewpoint-neutral criteria contained in the 1998 Banner Policy.

17.     Organizations that wish to use the Banner Forum must provide employees of DFWI with the description, location, and date of the event; requested dates for banner display; and proof of the Organization's nonprofit status. If the dates are available, DFWI provides a contract confirming the details, which the Organization then signs and returns. DFWI confirms the Organization's reservation once DFWI receives the Organization's payment in full.

18.     The Defendants have permitted banners for a variety of events, including those with a pro-religious viewpoint such as Kenneth Copeland Ministries, which used the Banner Forum to promote its "Southwest Believers Convention," in the summer of 2020. Defendants also regularly approve banner displays by religiously affiliated Organizations, such as Texas Christian University, which

displays banners every year from late summer through the end of the fall. Other examples of approved events include art festivals and Memorial Day celebrations.

19. The Banner Forum constituted a limited public forum under the First Amendment of the United States Constitution. As such, the City may not exclude speech on topics otherwise permitted because the City disapproves of the speaker's viewpoint.

**MA's use of the Banner Forum in 2019**

20. In the summer of 2019, Defendants granted MA access to the Banner Forum to promote an educational event focused on the U.S. National Motto, "In God We Trust." The event, titled "In NO God We Trust," (the "2019 Event") was held at the Fort Worth Botanical Gardens, was open to the public, and featured several knowledgeable speakers. Bright yellow banners featuring the event title in bold blue type were displayed on Downtown Fort Worth streets for several weeks prior to the event.

21. To obtain approval for the 2019 Event, MA contacted DFWI, submitted information regarding the 2019 Event's nature, date, and location. MA filled out, signed, and returned to DFWI a contract confirming the number of banners, the dates the banners would be displayed, and the price MA would pay. MA remitted payment to DFWI and confirmed MA's reservation. MA's banners for the 2019 Event were displayed in downtown Fort Worth.

22. MA's striking banners led to national media attention and a number of complaints.[3] But the City stood firm in protecting Metroplex Atheists' First Amendment rights. Then-Mayor Betsie Price said on Twitter, "While many of us may not agree with the message, the organization did follow policies and procedures . . . We must respect freedom of speech."[4] The City's official statement rightly noted that, "[i]f an organization meets the established criteria for purchasing the banners, the city cannot discriminate or dictate the content unless it contains profanity, threats, or other inappropriate images."[5]

23. The Banner Forum fulfilled its purpose for MA's 2019 Event. Approximately 200 individuals attended the 2019 Event on July 14, 2019, exceeding MA's expectations.[6]

**MA's 2023 Banner Forum Application**

24. Hoping to again gain the benefit of increased awareness promised by the Banner Forum, in October of 2022, MA contacted DFWI to inquire about reserving a time slot for a new event MA was planning. The planned event would focus on Christian Nationalism and keeping prayer out of public schools ("Christian Nationalism Event"). Confirmed speakers for the Christian Nationalism Event

---

[3] See e.g. Elizabeth Wiley & Lauren Zakalik, *'In No God We Trust' banners stirring up controversy in Fort Worth*, WFAA (July 2, 2019, 7:51 PM), https://www.wfaa.com/article/news/local/tarrant-county/in-no-god-we-trust-banners-stirring-up-controversy-in-fort-worth/287-3089ec15-91d7-4924-9396-2abdb7ee8a84.
[4] Betsie Price, @BetsiePriceftw, Tweet Message, TWITTER (July 2, 2019, 3:28 PM), https://twitter.com/BetsyPriceftw/status/1146138702843908101?ref_src=twsrc%5Etfw%7Ctwcamp%5Etweetembed%7Ctwterm%5E1146138702843908101%7Ctwgr%5E773972877ac6c11d6ce71ff84d59415b0a9b9c2d%7Ctwcon%5Es1_&ref_url=https%3A%2F%2Fwww.cbsnews.com%2Ftexas%2Fnews%2Ffort-worth-in-no-god-we-trust-banners-atheist-group%2F.
[5] *Id*.
[6] David R. Brockman, *In No God We Trust?*, TEXAS OBSERVER (July 24, 2019, 6:00 AM), https://www.texasobserver.org/in-no-god-we-trust/.

include Dr. Bradley Onishi, a religion scholar who has researched and written on the topic of Christian Nationalism, Reverend Dr. Katie Hays, a Christian pastor, Dr. Wil Jeudy, an urgent care physician and state director of American Atheists, and Randall Theo, president of the Downtown Fort Worth chapter of Freedom From Religion Foundation and public school teacher.

25. Knowing that availability in the Banner Forum was limited, MA chose the date of the event, August 26, 2023, based on when the Main Street Banners were available. MA then reserved the same venue they used in 2019, the Fort Worth Botanic Garden, for dates that would coincide with the availability of the Main Street Banners.

26. MA then provided DFWI with the date of the event, the venue, the planned banner artwork, and proof of MA's nonprofit status.

27. On October 24, 2022, KayLee Pratt, Marketing & Special Projects Manager with DFWI, emailed Terry McDonald, MA's Treasurer, regarding MA's Banner Forum application. Ms. Pratt attached a partially complete contract for MA's banners to be displayed from August 8th through 22nd, 2023. Ms. Pratt noted that there were incomplete portions of the contract related to whether the banners would be picked up by MA or stored by DFWI. Ms. Pratt asked Mr. McDonald to fill in the missing information regarding banner handling and return the contract to her.

28. Ms. Pratt did not indicate that there were any other criteria that MA's Christian Nationalism Event needed to meet.

29. MA was never asked to supply an estimate of the number of attendees at the Christian Nationalism Event.

30. On November 22, 2022, Ms. Pratt emailed Mr. Word and Mr. McDonald requesting proof of non-profit status and the definitive event date, and assuring them that once that information was received, she would sign the contact and send them the invoice for payment.

31. On November 30, 2022, Mr. Word responded with the event date and venue—August 26, 2023 at the Fort Worth Botanical Gardens.

32. MA believed that the proposed banners were set to be displayed in the Banner Forum on the requested dates.

**The City's Pretextual Denial of MA's Application**

33. In or around April or May of 2023, an employee of either DFWI or DFWII contacted the office of the City Attorney regarding Metroplex Atheists' application.

34. The employees decision to contact the City Attorney regarding Metroplex Atheists' application was a departure from the standard practice of DFWI and DFWII. Neither DFWI nor DFWII sought the guidance of the City Attorney about any prior application to participate in the Banner Forum under the 1998 Banner Policy.

35. Upon receiving the inquiry from either DFWI or DFWII, a lawyer within the office of the City Attorney contacted Assistant City Manager William Johnson with the intent of finding some basis to reject the Plaintiff's application.

36. Mr. Johnson informed the attorney that it was his opinion that the event was too small to be allowed to participate in the Banner Forum.

37. Mr. Johnson then communicated his opinion that the event should be excluded because of its size to Andy Taft in his capacity as the President of DFWI.

38. On May 19, 2023, Randy Word, a MA board member, received a telephone call from Ms. Pratt informing Mr. Word that MA's Banner Forum application had been denied by the City Manager's office. Ms. Pratt stated that MA was not in compliance with the Banner Forum policy and that said policy had been "tweaked" since MA took part in the Banner Forum in 2019. Ms. Pratt would offer no further information and directed Mr. Word to the City Manager's office for more details.

39. Over the next two weeks, Mr. Word made multiple telephone calls and sent multiple emails seeking further information on why MA's Banner Application had been denied. After numerous dead ends, Mr. Word and MA president Umair Khan drove to the City Manager's office in person and were granted an appointment with Assistant City Manager, William Johnson.

40. Mr. Word and Mr. Khan met with Mr. Johnson at his office on May 30, 2023. Mr. Johnson stated that MA's Banner Forum application had "somehow" ended up on his desk. He further informed Mr. Word and Mr. Khan that MA's Banner Forum application was denied because the event was not of a "magnitude" to qualify.

41. The Banner Policy makes no reference to the expected "magnitude" of any event promoted.[7]

42. On May 31, 2023, Mr. Word sent an email to Ms. Pratt at DFWI, requesting records for (1) all nonprofits that applied to participate in the Banner Forum from 2022 to the present; (2) the name, date, location, and type of event held by each nonprofit that was approved to participate in the Banner Forum during that time; and (3) copies of any relevant emails, between DFWI, the City, or Mr. Johnson, that mention MA, Mr. Word, Mr. Johnson, or MA's Banner Forum application. Ms. Pratt responded on June 1, 2023, that any records request must go through the City's Public Records department.

43. The same day, May 31, 2023, Mr. Word sent a Public Information Request to the City requesting the following:

    a. A copy of the email sent from Mr. Johnson to Ms. Pratt denying MA's Banner Forum application;

    b. Copies of all emails sent from Mr. Johnson to DFWI that mention MA, Randy Word, and/or Terry McDonald in the past 6 months;

    c. Copies of all emails between the City and DFWI mentioning MA, Randy Word, and/or Terry McDonald in the past 6 months; and

---

[7] *See* note 4, above.

       d.       Copies of all emails between the City and DFWI mentioning the Banner Forum and/or the Banner Policy in the past 6 months.

44.     The City balked at Mr. Word's request, replying that fulfilling said request would require the City to search the email accounts of "thousands" of City employees and would likely incur a "very substantial fee" for Mr. Word in the process. Mr. Word responded by narrowing his request to only emails between DFWI and Mr. Johnson that mentioned MA.

45.     On June 1, 2023, Mr. Word filed open records requests with the City's Public Records department seeking a list of all nonprofits that had applied for banner displays in 2022 and YTD in 2023 along with the name, date and location of the associated event. The City's Office of Development Services responded with two emails on June 8, 2023, one informing Mr. Word that there were no documents responsive to his request, and another informing him that "Development Services processes Banner Permits, however, Downtown Fort Worth Inc is a Bonded Banner Area, they process their own Banners in the authorized designated areas."

46.     In short, DFWI and the City each claimed that the other was the proper keeper of the records Mr. Word sought, effectively denying him access to those records without having to explicitly say that is what Defendants were doing. Mr. Word has yet to receive any records responsive to his requests.

47.     On June 2, 2023, Mr. Word sent an email to Lauren Prieur, Director of TPW, informing her of Mr. Johnson's denial of MA's Banner Forum application and requesting an appeal pursuant to Section 1-67 of the City's 1998 Banner Policy.

48. On June 14, 2023, after Mr. Word received no response from Ms. Prieur, counsel for MA sent a demand letter via email to Defendant Parker describing the apparent violation of MA's First Amendment rights and requesting that the denial of MA's application be rescinded. The letter stated that MA was prepared to pursue litigation if the city did not comply with its constitutional obligations.

49. Later on June 14, 2023, Ms. Prieur finally responded via email to Mr. Word (not to counsel for MA). She informed Mr. Word that the City Council would discuss the denial of MA's Banner application at their executive session on June 27, 2023 and that the session would be closed to the public.

50. The final meeting of the Fort Worth City Council before the July break was June 6, 2023, prior to MA learning that its appeal would not be reviewed by "[t]he appropriate City Council Committee" as stated in section 1-67 of the 1998 Banner Policy but, rather, would be reviewed by the City Council itself in closed session.

51. On June 21 and 22, 2023, Mr. Word sent emails to City Councilmembers Bivens, Crain, Nettles, and Blaylock requesting assistance in MA's appeal of the denial. In these emails, which were identical in content, Mr. Word summarized MA's communications with DFWI and Mr. Johnson regarding the denial of MA's Banner Forum application. He included a copy of the City's statement regarding the 2019 Event banners and Mayor Betsy Price's tweets regarding the same. Mr. Word reiterated that MA met all the requirements to access the Banner Forum as documented in the City's 1998 Banner Policy and that the so-called "magnitude" justification for the denial is not a proper requirement under the policy.

52. On June 21, 2023, Joshua Rivers, District Director for Mayor Pro Tem Gyna Bivens, responded that he would "be sure to share this with MPT Bivens."

53. Daniel Mason, District Director in Councilmember Crain's office, responded on June 23, 2023, that Councilman Crain was out of the country but Mr. Mason would "put [Mr. Word's] email and comments in front of him as soon as he returns."

54. Jazzmen Tate, District Director in Councilmember Nettles' office, responded on June 22, 2023, that Mr. Word's "issue ha[d] been noted."

55. Emily Niestroy, from Councilmember Blaylock's office, responded on June 22, 2023, that Mr. Word's "comments and commitment to the community are greatly appreciated."

56. On June 27, 2023, the City Council convened what Deputy City Attorney Laetitia Coleman Brown described as a "Special Called Executive Session." According to Ms. Brown, one of the items on the agenda to be discussed with the City Council attorney was "legal issues concerning banner policy."

57. The City Council's agenda for the June 27, 2023 meeting makes no reference to either a special executive session, Metroplex Atheists, or the 1998 Banner Policy.

58. On June 28, 2023, following the Special Called Executive Session, Ms. Prieur emailed Mr. Word. The full text of her email reads: "The original denial will be upheld.  A moratorium on new banners will be issued while the city reviews the

existing policy for updates. The appeal committee mentioned in the policy is no longer in existence."

59. The City Council placed a "hold" on approving any new Banner Forum applications until the City Council could review the 1998 Banner Policy for potential updates.

60. The City Council did not convene during the month of July.

61. No pending applications other than that of Metroplex Atheists were denied, but rather were held in abeyance to be reviewed under the 2023 Banner Policy.

62. In direct contradiction of the statement from Ms. Prieur that a "moratorium" was placed on any new banners while the policy was under review, Banner Forum applications that had already been approved for display in July 2023 were displayed as planned.

63. Despite the Defendants' claim that there was a "moratorium" on new Banner Forum applications and that the 1998 Banner Policy was under review, there is no public acknowledgement of these facts to anyone other than Plaintiff.

64. DFWI's website describing the procedures and requirements of the Banner Forum remained unchanged at the time the Defendants denied the Plaintiff's application.

65. The Defendants did not apply a "tweaked" version of the 1998 Banner Policy to deny any other application and the City informed Plaintiff that Texas

Christian University in particular will, in all likelihood, be allowed to participate in the Banner Forum under whatever new policy the City Council establishes.

66. Defendants acted with the intent to exclude Plaintiff from the Banner Forum because they disapproved of the banner's anti-Christian Nationalism message and MA's atheist identity. But they knew they could not do so openly and honestly without blatantly violating MA's First Amendment rights. Instead, Defendants colluded and conspired behind closed doors to concoct a plan to exclude MA from participating in the Banner Forum without admitting they were doing so.

67. Defendants' "magnitude" justification is pure pretext and any amendment of the 1998 Banner Policy to include "magnitude" as a criterion for participation in the forum would have required an act of the City Council, as evidenced by the City Council's adoption of the 2023 Banner Policy.

68. The City Council took no action to include a "magnitude" requirement in the Banner Forum between when MA participated in 2019 and the denial of their application on May 19, 2023.

69. On August 26, 2023, 100 people attended Plaintiff's event in person. An additional 189 watched the event online.

**Metroplex Atheists' damages**

70. On July 11, 2023, Plaintiff purchased 36 nylon banners from Lone Star Banners & Flags at a cost of $2,160 so that they would be prepared to participate in the Banner Forum as planned.

71. In addition, and as a result of the City's rejection of its application to participate in the Banner Forum, in June of 2023, Metroplex Atheists began making arrangements for other modes of advertising for the upcoming event.

72. MA contracted with Lamar to display an ad promoting the event on a billboard facing eastbound on the south side of Interstate 20 for 30 days, from July 31 through August 27, 2023, at a cost of $3,047.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION: FIRST AMENDMENT, FREEDOM OF SPEECH
### (42 U.S.C. § 1983)

73. All preceding allegations are incorporated herein by reference.

74. The actions of Defendants and their agents, servants, employees, or contractors, as described above, violated the Free Speech Clause of the First Amendment of the Constitution of the United States, as incorporated to the states by the Fourteenth Amendment.

75. Defendants' policies, practices, and customs prevented Metroplex Atheists from participating in the Banner Forum, a limited, designated public forum.

76. Defendants sudden imposition of a never-before-mentioned "magnitude" requirement as the justification for denying MA access to the Banner Forum constituted a prior restraint that lacked any narrow, objective, and definite standard and was therefore unconstitutional.

77. In addition, the Defendants' denial of Metroplex Atheists'—and *only* Metroplex Atheists'—application to participate in the Banner Forum while all other applications are either being allowed to go forward as planned or are being kept

pending, rather than being denied, constitutes viewpoint discrimination that cannot be justified.

78. Furthermore, Defendants stated explicitly that Metroplex Atheists was excluded from the forum because of the content of the banners it wished to display, namely that the event advertised on the banners was not sizeable enough in the opinion of the Defendants.

79. As a content-based restriction on participation in a public forum, the Defendants' imposition of a "magnitude" requirement on Metroplex Atheists' application is subject to strict scrutiny.

80. The exclusion of Metroplex Atheists from the Banner Forum furthered no compelling government interest, nor was it narrowly tailored to achieve any such interest.

81. The imposition of the purported "magnitude" requirement was merely a pretext to preclude Metroplex Atheists' participation in the Banner Forum because of their viewpoint as atheists opposed to Christian Nationalism. As such, the Defendants' actions to exclude Metroplex Atheists from the Banner Forum constituted viewpoint discrimination, "an egregious form of content discrimination" that cannot be justified even under strict scrutiny. *Rosenberger v. Rector & Visitors of the Univ. of Va.*, 515 U.S. 819, 829 (1995).

82. Each of the Defendants intentionally and knowingly violated the Plaintiff's well-settled constitutional rights under the Free Speech Clause of the First Amendment, as well as that of its members.

83. Defendants acted under color of law in violating the First Amendment as described herein in violation of 42 U.S.C. § 1983.

### SECOND CAUSE OF ACTION: FIRST AMENDMENT, FREE EXERCISE OF RELIGION
### (42 U.S.C. § 1983)

84. All preceding allegations are incorporated herein by reference.

85. The actions of Defendants and their agents, servants, employees, or contractors, as described above, violate the Free Exercise Clause of the First Amendment of the Constitution of the United States.

86. Defendants' policies, practices, and customs sought to banish atheist viewpoints from the marketplace of ideas while simultaneously elevating religious—and particularly Christian—viewpoints to a preferred status.

87. Both the Defendants' reappraisal of the Banner Forum on June 27, 2023, and the City Council's subsequent decision to reconsider the terms of the program were a direct response to Metroplex Atheists application to participate.

88. The Free Exercise Clause of the First Amendment "forbids subtle departures from neutrality and covert suppression of particular religious beliefs, *Church of Lukumi Babalu Aye v. City of Hialeah*, 508 U.S. 520, 534 (1993) (internal quotation marks omitted), and "the suppression of unpopular religious speech and exercise has been among the favorite tools of petty tyrants." *Shurtleff v. City of Boston*, 142 S. Ct. 1583, 1608 (2022) (Kavanaugh, J. concurring) (internal citations omitted). By taking action to prevent Metroplex Atheists' involvement in the Banner Forum because of its religious viewpoint, the Defendants' violated the free exercise rights of Metroplex Atheists and its members.

89. Each of the Defendants intentionally and knowingly violated Plaintiff's well-settled constitutional rights under the Free Exercise Clause of the First Amendment, as well as that of its members.

90. Defendants acted under color of law in violating the First Amendment as described herein in violation of 42 U.S.C. § 1983.

## RELIEF SOUGHT

WHEREFORE, Plaintiff respectfully requests that this Court grant the following relief:

A. Declaratory judgment that Defendants' actions and policies described above violate Plaintiff's rights under the Establishment, Free Exercise, and Free Speech Clauses of the First Amendment of the United States Constitution;

B. Award special damages in an amount of $5,207;

C. Award reasonable attorney fees and costs to the Plaintiff pursuant to 42 U.S.C. § 1988; and

D. All other relief the Court deems just and reasonable.